## State of Vermont v. Randall Gokey

[574 A.2d 766]

No. 88-129

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed March 16, 1990

---

130

*Shelley A. Hill,* Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Michael Rose,* St. Albans, for Defendant-Appellant.

**Morse, J.** Defendant Randall Gokey was convicted, following a jury trial, of sexual assault of a six-year-old girl. 13 V.S.A. § 3252(3). He appeals, claiming error in the admission of certain testimony by a child psychologist. We agree and accordingly reverse and remand.

In January of 1987, the complainant (child) told her mother that defendant had "humped" her on several occasions, most recently in the previous month. At trial, she graphically described the December 1986 incident, with which defendant was charged, and demonstrated for the jury with dolls. A drawing she had made of the incident was introduced as Exhibit Two.

The State called as its last witness a psychologist to describe to the jury the "profile" of a sexually abused child and to give an opinion whether the child fit the profile. According to the expert witness, the profile may include physical symptoms, "such as headaches, vomiting, [and] nausea," and behavioral symptoms, "such as being secretive, worried, anxious, having low self-esteem, having difficulty concentrating, especially in school, day dreaming, unable to finish assignments, sometimes acting out such as stealing, [and] having difficulties with other children." These symptoms, however, do not comprise the whole profile, according to the witness. She stated:

> The generally accepted profile is one in which the child first of all reports having been sexually victimized. And the child asks, sometimes for assistance for protection from further victimization. *The child also names the abuser as part of the profile and the child gives details about the sexual victimization.* Oftentimes the child supplies information that would be beyond their ability to know given their age. What I might call idiosyncratic information.

(Emphasis added.) The expert witness testified further that she interviewed the victim, asked her to draw "a picture of the worst thing that anybody had ever done to her body" (Exhibit Two), and had her demonstrate the abuse with dolls. Over defendant's objection on hearsay grounds, the psychologist testified, in graphic and sexually explicit detail, that the child had described acts of vaginal and forced anal intercourse with the defendant. The expert explained how the child had demonstrated the acts with the dolls, labeling the girl doll as the child and the boy doll as Randy Gokey. Finally, the expert emphasized that she asked the child questions designed "to demonstrate the difference between telling a lie and telling the truth." At this point, defendant's counsel asked to approach the bench and moved for a mistrial. The motion was denied.

The expert concluded that the child fit the profile of a sexually abused child. The behaviors could not be attributed to any cause other than sexual abuse because "she had never been through anything else that would cause any signs of emotional disturbance or upset other than this victimization. There's nothing else that happened to the child up to that point."

At the close of the State's case, defendant renewed the motion for a mistrial, stating: "I think that [the expert's] testimony was so highly prejudicial that it cannot be cured by an instruction." Defense counsel argued specifically that the expert's testimony exceeded the bounds permitted by this Court in *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987). Counsel insisted that "this expert went beyond stating what the characteristics of this syndrome were and the fact that this child suffered from it." Again, the court denied the motion.

The defendant testified, denying the allegations. He said that the child's father exposed her to adult movies, pictures of naked women and sexually graphic language, words the child had used in describing a penis and vagina to the State's expert, and that he was aware that inappropriate sexual activity was carried out with the child by her cousins in a doghouse.

At the conclusion of the trial, the court instructed the jury on the law, cautioning them not to use the psychologist's testimony "to conclude that the defendant committed the specific sexual

abuse alleged." The defendant objected to the instruction as inadequate to cure the prejudice occasioned by the expert's testimony.

I.

The State seeks to justify its expert's testimony under V.R.E. 702[1] as "profile" evidence. "Profile or syndrome evidence is evidence elicited from an expert that a person is a member of a class of persons who share a common physical, emotional, or mental condition." *State v. Percy*, 146 Vt. 475, 483, 507 A.2d 955, 960 (1986). "[T]he condition must be one that is generally recognized in the field." *Id.* Profile evidence is typically admitted in evidence to assist the jury in understanding "superficially bizarre behavior" of a putative victim, such as a child's ambivalence about pursuing a sexual abuse complaint, *State v. Middleton*, 294 Or. 427, 436, 657 P.2d 1215, 1220 (1983), or a child's recantation of an earlier accusation, *Wheat v. State*, 527 A.2d 269, 273–74 (Del. 1987). In these situations, the expert's testimony may be useful to dispel misconceptions about the behavior of victims of certain crimes and to show that the conduct of the complaining witness, however seemingly unusual, is consistent with the profile. See *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986) (citing numerous cases); *People v. Bowker*, 203 Cal. App. 3d 385, 393–94, 249 Cal. Rptr. 886, 891–92 (1988); *Wheat*, 527 A.2d at 275 ("limited use of expert testimony . . . is appropriate to assist the finder of fact . . . in evaluating the psychological dynamics and resulting behavior patterns of alleged victims of child abuse, where the child's behavior is not within the common experience of the average juror"); *State v. Black*, 537 A.2d 1154, 1156 (Me. 1988). The function of the testimony is thus primarily rehabilitative, where behaviors such as delay in reporting, recantation, or a continued relationship with the alleged abuser may be mistaken as

---

[1] V.R.E. 702 provides:
    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

impeaching the credibility of the child. See generally Myers, Bays, Becker, Berliner, Corwin & Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1, 86–92 (1989) (article authored by experts in fields of law, medicine, psychiatry, psychology and social work discusses clinical, scientific and legal issues pertaining to expert testimony in child sexual abuse cases).

■ While the expert may state that the complaining witness exhibits symptoms typical of sexually abused children, she may not, at least on this record, go so far as to conclude that the witness *is* a victim of sexual abuse. We heed the remarks of the Supreme Judicial Court of Maine:

> No comparison testing was done with children who were not victims of sexual abuse to determine whether they also demonstrated like indicators. [The expert's] testimony demonstrates no scientific basis for determining that a causal relationship exists between sexual abuse and the "clinical features of sexual abuse," nor is there demonstrated even a positive correlation between the two. In the absence of any demonstration of scientific reliability, we reject the testimony of the mental health expert identifying [the complainant child] as a victim of child sexual abuse.

*State v. Black*, 537 A.2d at 1157; see also *State v. Moran*, 151 Ariz. at 383, 728 P.2d at 253 (psychologist's opinion "on whether the crime occurred, whether the defendant is the perpetrator, and like questions" held inadmissible). To the extent the opinion that sexual abuse occurred is based on what the child told the psychologist, the jury is capable of drawing its own conclusions from the child's report; to the extent the opinion is based on behaviors and symptoms, the evidence is insufficiently reliable. The authors of the Nebraska Law Review article cited above conclude:

> Because of disagreement among experts on child sexual abuse, and because of the consequences of criminal conviction, it may be appropriate in criminal jury trials to eschew behavioral science testimony cast in terms of a direct opinion that sexual abuse occurred. However, . . . it may be ap-

propriate to permit a properly qualified expert to testify that a child demonstrates age-inappropriate sexual knowledge or awareness. Furthermore, it may also be proper to permit an expert to state that a child's symptoms and behavior are consistent with sexual abuse.

Myers, 68 Neb. L. Rev. at 85. Myers and colleagues warn of the special danger of the expert inferring the occurrence of sexual abuse from the presence of characteristics known as Child Sexual Abuse Accommodation Syndrome.[2] According to these authors, the syndrome is not "a diagnostic device. The syndrome does not detect sexual abuse. Rather, it assumes the presence of abuse, and explains the child's reactions to it. . . . Thus, the accommodation syndrome is not probative of abuse." *Id.* at 67 (footnotes omitted). More generally, these authors conclude: "At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse." *Id.* at 69.[3] Limited reference to the syndrome may be appropriate, however: "The syndrome helps explain why many sexually abused children delay reporting their abuse,

---

[2] This syndrome was labelled and described in Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177 (1983).

[3] At the same time, the authors state that "it is possible to argue credibly that in many cases qualified experts can determine with reasonable clinical certainty whether a child's symptoms and behaviors are consistent with sexual abuse, and not with other causes." 68 Neb. L. Rev. at 77. Among those "symptoms and behaviors" are factors such as: "the child's story remains consistent over time; the child's report indicates an escalating progression of sexual abuse over time; [and] the child describes idiosyncratic details of the abuse." *Id.* at 75. Thus, "[w]hile no symptom or set of symptoms is conclusive proof of sexual abuse, when symptoms evidencing abuse are present *in conjunction with a report that bears indicia of reliability*, the clinician is justified in forming a clinical opinion that a child has been sexually abused." *Id.* at 61–62 (emphasis added). We have no cause to question this conclusion. But it does not follow that the opinion, though perhaps justified from a clinical standpoint, is admissible at trial. Expert opinion testimony must "assist the trier of fact" under V.R.E. 702. As we have said, the jury does not generally need assistance in drawing conclusions from "the child's story" and the "idiosyncratic details of the abuse." Determining the truth of the child's report does not require "scientific, technical, or other specialized knowledge," the premise of Rule 702 testimony. There may be occasions where an expert is justified in concluding that abuse occurred solely on the basis of observable symptoms apart from the child's story; if so, we do not rule out the possibility of allowing testimony to that effect. This is not such a case.

and why many children recant allegations of abuse and deny that anything occurred. If use of the syndrome is confined to these rehabilitative functions, the confusion clears, and the accommodation syndrome serves a useful forensic function." *Id.* at 68.

The profile itself is necessarily general, in the sense that it describes the characteristics of a class; it does not include what the person allegedly suffering from the condition believes to be the cause of her condition. It does not, most emphatically, include the name of the alleged abuser and the details of the alleged abuse. See *State v. Dunbar*, 152 Vt. 399, 406–07, 566 A.2d 970, 974–75 (1989) (expert testimony on profile of sexually abused child held admissible where "no part of that testimony was addressed to the complainant [and it] consisted of descriptions of the components of the behavioral characteristics, which, in general, lead to a diagnosis of sexual abuse").

These themes have been reflected in our cases. In *State v. Catsam*, we permitted the admission of expert testimony on the symptoms of sexually abused children "in appropriate circumstances" since

> [t]he unique psychological effects of sexual assault on children place the average juror at a disadvantage in understanding the behavior of the victim. The confusion, shame, guilt, and fear that often result from such abuse may cause a "victim to react and behave in a different manner from many other crime victims, especially when the sexual abuse victim is forced to testify to the acts in open court." Jurors who themselves have never experienced such emotions may be better able to assess the credibility of the complaining witness with the benefit of a better understanding of the emotional antecedents of the victim's conduct provided by the expert testimony.

148 Vt. at 369, 534 A.2d at 187 (quoting *Commonwealth v. Baldwin*, 348 Pa. Super. 368, 377, 502 A.2d 253, 258 (1985); citations omitted); see also *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 777 (1987) ("The behavioral patterns of child victims of sexual abuse are generally not known to the average juror and are therefore a proper subject for expert testimony."). We drew the

line in *Catsam* by excluding testimony that is "tantamount to a direct comment that the complainant was telling the truth about the alleged sexual assault for which the defendant was charged." 148 Vt. at 370, 534 A.2d at 187.[4]

## II.

In this case, the State introduced evidence of the profile of a sexually abused child to assist the jury in understanding three facts about the child's behavior. First, according to her mother, the child did not tell her of the December 1986 incident of abuse until about two weeks later. Second, the child claimed that defendant had abused her on many other occasions prior to the December incident, but she had not told her mother until January 1987. Third, although the point was disputed, the child continued to visit the defendant's house, where her playmate lived, often remaining there when defendant was the only adult present. We hold that these facts in evidence, which might be considered anomalous or unusual, justified the admission of expert testimony for the limited purpose of showing the jury that the child's behavior in these respects was consistent with the behavior of child sexual abuse victims generally. Without such testimony, the jury would be disadvantaged and might base its deliberations upon misconceptions.

While limited profile evidence was thus permissible, here the expert exceeded the limits. At most, she ought to have been permitted to describe to the jury evidence on the tendency of sexually abused children to delay reporting incidents of abuse and to continue relationships with their abusers, to give her opinion whether the child's behavior was consistent with this evidence, and to explain the basis for that opinion. Her graphic retelling of the child's description of the events, her comments about the child's ability to distinguish truth from falsehood, and her conclusory remarks about "this victimiza-

---

[4] In *Catsam*, the defendant challenged the expert's opinion that sufferers of post-traumatic stress disorder "generally do not make up stories about sexual abuse." He did not, however, challenge the admission of the expert's "opinion that the complainant suffered from the disorder," 148 Vt. at 368–69, 534 A.2d at 186–87, and we did not consider in *Catsam* the propriety of that testimony.

tion" were all beyond the pale—unduly prejudicial and unjustifiable under our rules of evidence and our cases.

## III.

■ The State argues that what the child told the expert about the incident is a legitimate part of the basis of the expert's opinion that the child fit the profile of a sexually abused child. V.R.E. 703, 705. For this proposition, the State relies on *State v. Recor*, 150 Vt. 40, 46–49, 549 A.2d 1382, 1387–88 (1988). In *Recor*, as here, we considered the admissibility of testimony by the State's expert about statements made to the expert by the complaining witness, a child victim of sexual assault. We held that the statements were not excludable under the hearsay rule, since they were offered under V.R.E. 703, which addresses the bases of expert opinion.[5] We cautioned, however, as follows:

> Under Rule 703, if an expert relies on the out-of-court statements of another in forming his or her opinion *and* if such statements are of a type reasonably relied on by experts in the particular field, then the statements—even if not independently admissible for their substance—will be admissible for the limited purpose of demonstrating the basis for the expert's opinion.

*Id.* at 48, 549 A.2d at 1388 (emphasis in original). In this case, neither condition was met. First, without assuming the truth of what is sought to be proved,[6] it is nonsensical to say that the

---

[5] V.R.E. 703 provides:
   The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
   V.R.E. 705 is also relevant in this context:
   The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

[6] An obvious danger attending the use of the expert's testimony is that throughout her interview with the child she assumed the truth of the allegations underlying this trial. Even when this assumption is not explicit, it is

psychologist legitimately relied on the child's statements that the defendant had abused her as a basis for her expert opinion that the child exhibited the symptoms common of sexually abused children.[7] The child fit the profile, if at all, because her behavior matched the behavior of sexually abused children in general, not because she told the psychologist that she was a victim of abuse. The child's account of the incident is not a proper part of the basis of the psychologist's opinion that she fit the profile of an abused child any more than an automobile driver's statements to an accident reconstructionist that the other driver was at fault is a legitimate part of the basis of that expert's opinions on the mechanics of the accident. Second, there is absolutely no showing that "such statements are of a type reasonably relied on by experts," and we doubt that there could be. Of course, the child's statements *were* the basis of the expert's opinion that defendant had abused her, but *that* opinion is not what she was called upon or permitted to offer. The basis of an *inadmissible* opinion cannot be raised by its own boot-straps to the level of admissible evidence under Rule 703. The greater part of the expert's testimony here cannot be justified under that rule.

■■ Under V.R.E. 702, a qualified expert may offer "scientific, technical, or other specialized knowledge" if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." The expert here was qualified to testify only on her specialized knowledge of the effects of sexual abuse on chil-

---

apparent. Thus, to the question, "Could you describe to the jury please her affect as she was talking about this?" the witness responded:

I asked her what kind of feelings did you have when that was being done to you. She said, "I felt bad," and looked sad. I said, "how do you feel about your body now that this has been done to you?" She says, "I feel bad." And she looked sad like she had lost something that had been part of her.

The assumption may be appropriate in the therapeutic context, but it cannot enter the adjudicatory context without sacrificing the defendant's presumption of innocence.

[7] In contrast, a statement such as "I have headaches" may plausibly support a conclusion that the child fit the profile of a sexually abused child (as well as a number of other "profiles").

dren, and, at most, to give her opinion on whether this child fit the profile of a sexually abused child in certain respects. She was not qualified and was not possessed of "scientific, technical, or other specialized knowledge" pertaining to the credibility of this witness and the guilt or innocence of this defendant. These are matters, in our system of criminal law, that are reserved for the jury. See *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985); *State v. Ross*, 152 Vt. 462, 475, 568 A.2d 335, 343 (1989) (Morse, J., dissenting). An expert was hardly required to "assist the trier of fact" in drawing inferences from the child's account of the abuse. Any lay person is adequate to the task. "[O]nce the emotional antecedents underlying the victim's behavior are explained, 'the jury needs nothing further from the expert.'" *State v. Moran*, 151 Ariz. at 382, 728 P.2d at 252 (quoting *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986)).

By repeating to the jury precisely what the child had told her and showed her in a drawing and with dolls, and by confirming the child's capacity to discern truth from falsehood, the State's witness impermissibly cloaked the child's testimony with a favorable expert opinion, imbued with scientific respectability and reliability. See *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985). In a rush of testimony that the prosecuting attorney concedes to have transgressed the constraints of good practice, the expert finally declared her opinion that the child had been victimized sexually by the defendant ("she had never been through *anything else* that would cause any signs of emotional disturbance or upset *other than this victimization*"). It was clear beyond doubt to all that the expert believed the charge against the defendant was true. See *State v. Moran*, 151 Ariz. at 384–85, 728 P.2d at 254–55.

We conclude that the expert's testimony, beyond a limited description of the profile and the opinion that the child's behaviors were consistent with that profile, was inadmissible under V.R.E. 702. Furthermore, the child's account of the incident did not constitute a proper basis for expert opinion testimony under Rules 703 or 705. Since the child's out-of-court statements did not qualify for the limited purposes permitted

by these rules, they were inadmissible hearsay.[8] The court's instruction was inadequate to dispel the prejudice of this testimony.

*Reversed and remanded.*

**Peck, J.,** dissents without opinion.

---

[8] Accordingly, defendant's objection early in the psychologist's testimony on hearsay grounds stated a proper rationale for excluding her testimony and should have received a favorable ruling.

The expert's testimony cannot be justified under V.R.E. 803(4), the hearsay exception for out-of-court statements made for the purpose of medical diagnosis or treatment. Under Vermont's rule, "statements relating to the inception or cause of a condition or symptom are not admissible even if pertinent to diagnosis or treatment." *State v. Recor,* 150 Vt. at 47, 549 A.2d at 1387; Reporter's Notes, V.R.E. 803(4); see also *State v. Derouchie,* 153 Vt. 29, 32, 568 A.2d 416, 417 (1989) (doctor's testimony relating rape victim's account of events went to cause of her condition and was inadmissible).

Neither can the disputed testimony be justified under V.R.E. 804a, which provides that certain out-of-court statements by putative victims of sexual assault (and certain other crimes) who are ten years of age or under at the time of trial are not excluded by the hearsay rule. The rule applies only where "the statements were not taken in preparation for a legal proceeding and . . . were made prior to the defendant's initial appearance before a judicial officer . . . ." V.R.E. 804a(a)(2). Here, defendant appeared before a judicial officer pursuant to V.R.Cr.P. 5 on February 11, 1987; the psychologist interviewed the child on May 4, 1987. In addition, the interview clearly occurred in preparation for legal proceedings. Accordingly, Rule 804a has no application here.