# State of Vermont v. Edward P. Callahan

[587 A.2d 970]

No. 88-463

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 11, 1991

*Gary S. Kessler,* Resource Attorney, Montpelier, and *Bettina V. Buehler,* Student Intern (On the Brief), South Royalton, for Plaintiff-Appellee.

*Michael Rose,* St. Albans, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from a conviction of driving while his license was suspended (DLS). 23 V.S.A. § 674(a). We affirm.

Defendant raises four issues on appeal. He contends that his Fifth Amendment right not to be placed in jeopardy twice was violated; that the trial court improperly placed on him the burden of proving his necessity defense; that the State was permitted to introduce irrelevant and prejudicial evidence; and that, during closing argument, the prosecutor unlawfully commented on his failure to testify.

## I.

Defendant argues that his Fifth Amendment right not to be placed in jeopardy twice was violated because, in an earlier proceeding, the prosecutor intentionally provoked him to move for a mistrial. By failing to raise this argument before the trial court, however, defendant waived it. "[W]here the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial . . . a defendant [may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy,* 456 U.S. 667, 676 (1982); *State v. Wood,* 146 Vt. 57, 57–58, 498 A.2d 494, 494–95 (1985). But,

> [w]e do not . . . have to reach the merits of the defendant's double jeopardy claim because he "'proceeded to trial, verdict and judgment without raising [a double jeopardy] claim. [I]n so doing he impliedly waived the defense of double jeopardy, and, therefore, that issue [is] not before us for determination on the merits.'"

*State v. Almeda,* 211 Conn. 441, 448, 560 A.2d 389, 393 (1989) (quoting *State v. Price,* 208 Conn. 387, 390, 544 A.2d 184, 185

(1988) (quoting *State v. Jones*, 166 Conn. 620, 630, 353 A.2d 764, 769 (1974))); see also *United States v. Becker*, 892 F.2d 265, 267 (3d Cir. 1989) ("double jeopardy claim may be waived if not raised at trial"); *United States v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir. 1984) (double jeopardy claim waived when raised for first time on appeal); Reporter's Notes to V.R.Cr.P. 12 at 68 (if double jeopardy is "not raised either by pre-trial motion or at trial, then [it is] waived unless unknown at the time").

## II.

■ Defendant also argues that the court erroneously allocated to him the burden of proving the necessity defense by a preponderance of the evidence. We disagree. Recently, we decided that the "defendant must bear the burden of proving the necessity defense by a preponderance of the evidence," where the charge was driving while one's license is suspended. *State v. Baker*, 154 Vt. 411, 419, 579 A.2d 479, 483 (1990). Our holding in *Baker* controls here.

## III.

Defendant contends that the court erroneously allowed the State to introduce irrelevant and prejudicial evidence in violation of V.R.E. 402 and 403. We find that the court did not abuse its discretion in admitting the contested evidence.

Defendant attempted to establish a necessity defense at trial. He claimed that he drove to Kessler's Market on February 9, 1987, because his housemate, Ms. Nichols, urgently needed milk and orange juice. Ms. Nichols testified that due to health problems she is "supposed to drink [milk] every time [she] turn[s] around" and that she needs orange juice to take with certain pills. She further testified that, because they had been snowed in, she had run out of milk and orange juice on February 9 and that she relied on defendant to keep her supplied with these items.

Defendant's driver's license was suspended on December 10, 1986. As a result, defendant relied on others to drive him when he needed to go shopping. Mr. Langlois, who drove defendant to shop every Thursday, testified that, on February 9, defendant called him and asked to be taken to the store. Mr. Langlois told defendant he could not drive him at that time because he was

busy plowing but that he might be able to drive him later in the day. Defendant was unable to call Mrs. Prairie, who also occasionally drove him to the store, because she was at the hospital visiting an aunt that day. Moreover, Ms. Nichols testified that she did not suggest to defendant that he walk to the store because he has bone cancer in his legs. Defendant argued that this evidence established a valid necessity defense.

The State, in an attempt to rebut defendant's necessity defense, called the owner of Kessler's Market, Ms. Mashtare, to the stand. Over defendant's objection, she was allowed to testify that while defendant was in the store on February 9 he did not appear to be in a hurry and that he had walked to her store on a previous occasion. Ms. Mashtare also asserted that in prior months defendant had driven to her store several times a week.

■■ The State has a right to rebut a defendant's evidence in support of a claim first introduced by the defendant. *State v. Marsh*, 70 Vt. 288, 302, 40 A. 836, 839–40 (1898). Ms. Mashtare's testimony that defendant did not appear to be in a hurry on February 9 and that he had walked to her store on a previous occasion was directly relevant to rebut elements of defendant's necessity defense.* It tended to show that Ms. Nichols's need for orange juice and milk was not immediate and that defendant could have walked to Kessler's Market rather than drive. Defendant does not argue that this evidence was unfairly prejudicial.

Ms. Mashtare's assertion that she had seen defendant drive to her store on previous occasions is more problematic since at first blush it does not appear to rebut directly any of the elements of necessity. Nevertheless, defendant portrayed the fail-

---

* The elements of the necessity defense are:

"(1) there must be a situation of emergency arising without fault on the part of the actor concerned;

(2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;

(3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and

(4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong."

*State v. Dapo*, 143 Vt. 610, 614, 470 A.2d 1173, 1175 (1983) (quoting *State v. Shotton*, 142 Vt. 558, 560–61, 458 A.2d 1105, 1105 (1983)).

ure of his backup system for obtaining necessary groceries as part of the emergency giving rise to his need to drive. During his opening statement, defendant's counsel stated: "The evidence will show that . . . [defendant's] regular arrangements for getting supplies in fell through and [he] had no other reasonable alternative but for [him] to drive to get those necessary supplies." Mr. Langlois and Ms. Nichols testified that either Mr. Langlois or someone else would drive defendant and Ms. Nichols when they had to go to the store. Defendant's attorney emphasized at closing argument that:

> The emergency situation that existed . . . was not just that Kate Nichols and [defendant] had run out of these essential items, milk and orange juice, that they needed and Ms. Nichols needed for her medical treatment. Not just that they ran out, but also that their backup system for getting them, that is, Mr. Langlois and Mrs. Prairie, were unavailable. That's what the emergency was. The emergency was that entire system, that entire situation.

■ In view of the defense theory, the State's evidence was relevant to rebut defendant's contention that he had a regular system to get to the store, the failure of which gave rise to his need to drive. Having argued that the failure of his backup system was part of the emergency giving rise to his need to drive, defendant cannot argue that evidence of the nonexistence of such a system was irrelevant.

■ Defendant contends that even if the evidence were relevant, it should have been excluded because it was unfairly prejudicial. See V.R.E. 403. The evidence was not rendered inadmissible under Rule 403 just because it was unfavorable, however. We stated in *State v. Parker*, 149 Vt. 393, 400, 545 A.2d 512, 516-17 (1988):

> [A] determination that the evidence in question will "prejudice" the defendant is not necessarily sufficient, standing alone, to activate the discretionary function in his favor. Virtually all evidence for the prosecution in a criminal case is prejudicial to some degree at least against the accused. Underlying 403 in its entirety is the proposition that a discretionary decision regarding the admission of evidence

challenged as unfairly prejudicial involves a balancing of the competing concerns for its relevance, on the one hand, and the extent of its prejudicial effect, on the other.

"The trial judge has substantial discretion in making Rule 403 rulings. The ruling can be overturned only on a showing of abuse of discretion." *State v. Larose*, 150 Vt. 363, 368, 554 A.2d 227, 231 (1988)(citations omitted). Defendant has not shown that the court abused its discretion in allowing the introduction of the disputed evidence.

■ ■ The court had reasonable grounds for its decision. The evidence was relevant to rebut a theory aggressively advanced by defendant. Moreover, there was reason to conclude that the evidence would not be unfairly prejudicial. First, when "evidence objected to was similar in effect to other evidence received without objection . . . the error, if any, [is] harmless." *Wakefield v. Levin*, 118 Vt. 392, 395, 110 A.2d 712, 714 (1955). Before Ms. Mashtare testified, Ms. Nichols had admitted that she did not know how defendant got to the store on certain occasions, thus raising an inference that defendant may have driven on those occasions. Also, the evidence of prior driving undermined only defendant's assertion that he had a system to get himself to the store. It did not affect his assertion that a snowstorm had created a special situation that made it necessary for him to drive on February 9. Finally, the court cautioned the jury that "evidence that the Defendant may have operated a motor vehicle at times other than on February 9th, 1987, may not be used to convict him of the pending charge absent proof beyond a reasonable doubt." In view of these circumstances, we conclude that the court did not abuse its discretion in allowing the State to present the testimony. See *State v. Chenette*, 151 Vt. 237, 246, 560 A.2d 365, 372 (1989)("While [the evidence] might have some prejudicial effect, the balancing was within the trial court's discretion and the prejudice was minimized by the limiting instruction.").

■ Defendant also argues that Ms. Mashtare's testimony constituted evidence of prior crimes, which may not be used "to prove that a person did the thing in question by proving that he or she had in the past done a similar thing." *State v. Patnaude*, 140 Vt. 361, 370, 438 A.2d 402, 405 (1981); see V.R.E.

404(b). At trial, however, defendant objected to the testimony only on grounds of irrelevance and prejudice. "An objection on one ground to the trial court does not preserve a claim of error on appeal based on other grounds." *In re R.L.*, 148 Vt. 223, 227, 531 A.2d 909, 911–12 (1987). Errors not preserved at trial will not be considered on appeal unless plain error has occurred. *State v. Mecier*, 145 Vt. 173, 177–78, 488 A.2d 737, 740–41 (1984). Plain error occurs only "where our failure to recognize a claim of error would result in a miscarriage of justice or 'where a glaring error occurred during the trial and was so grave and serious that it strikes at the very heart of the [defendant's] constitutional rights.'" *State v. Anderkin*, 145 Vt. 240, 245, 487 A.2d 142, 144 (1984) (quoting *State v. Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969))(citations omitted). Here, permitting Ms. Mashtare to testify about prior occasions when defendant drove does not rise to the level of plain error.

## IV.

Defendant's final argument is that the court erred in failing to grant him a new trial after the prosecutor improperly commented, during rebuttal argument, on his failure to testify. We do not agree that a new trial was warranted.

▮▮▮ "As a matter of statutory law and federal constitutional law, the prosecution may not in any way comment on a defendant's failure to testify." *State v. Shattuck*, 141 Vt. 523, 531, 450 A.2d 1122, 1126 (1982) (citations omitted). The test is: "'Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?'" *State v. Norton*, 134 Vt. 100, 106, 353 A.2d 324, 327 (1976) (quoting *United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969)). "The decision as to whether or not a comment is prejudicial is clearly within the sound judgment and discretion of the trial court." *Id.* at 105, 353 A.2d at 327.

The prosecutor stated:

It's true that the Defendant enjoys a lower standard of proof, but it's not so low that you abandon all common sense and reasonability in just giving him the benefit of the doubt. You still have to look at his case very carefully. Sure,

he doesn't have as high a hurdle to jump over, but you have to look at the quantity and the quality of the evidence that he presented to you and his attempt to overcome that hurdle that he is supposed to jump over or the burden that he is supposed to meet.

Defendant argues that, by inviting the jury to look at the sparseness of the evidence defendant presented in support of his necessity defense, the prosecutor referred to defendant's failure to testify.

■ When the contested statement is examined in context, it becomes clear that the prosecutor was merely commenting on the general weakness of defendant's evidence of necessity. Furthermore, because defendant was not the only person who could testify regarding the defense, the comment would not necessarily be construed to refer to his failure to testify. See *State v. Allen*, 9 Conn. App. 169, 179–80, 517 A.2d 1043, 1049 (1986) (prosecutor's comment that certain facts had not been explained was not error where "defendant conceded . . . that witnesses other than the defendant could have provided explanations"), *rev'd on other grounds*, 205 Conn. 370, 533 A.2d 559 (1987); *Watts v. United States*, 449 A.2d 308, 313 (D.C. Cir. 1982) ("when a prosecutor's argument consists . . . of a reference to uncontradicted government evidence, the jury will not necessarily construe it as a comment on the defendant's silence unless the defendant's testimony is the only possible source of contradiction"); *Grace v. State*, 6 Md. App. 520, 523, 252 A.2d 297, 299 (1969) ("[defendant's] argument that [the prosecutor's] request for an explanation pointed directly to the defendant is without merit for the reason that it is entirely possible that other witnesses could have given an explanation"). We note also that defendant specifically asked the court not to give the jury any instructions pertaining to his right not to testify. Under the circumstances, we find that the court did not abuse its discretion in refusing to grant a new trial based on the prosecutor's comments.

*Affirmed.*