## State of Vermont v. Lee Sims

[608 A.2d 1149]

No. 90-436

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 8, 1991

Motion for Reargument Denied March 18, 1992

174

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Elizabeth Zirkle*, Law Clerk (On the Brief), Montpelier, and *Phillips B. Keller, III*, Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Allen C.J.** Defendant was charged with committing two lewd and lascivious acts upon a child under the age of sixteen on or about the summer or fall of 1988, in violation of 13 V.S.A. § 2602. He was found guilty after trial by jury and appeals. We affirm.

On the basis of a single affidavit of probable cause, the State issued two informations accusing defendant of lewd and lascivious conduct with a child. The two incidents of abuse occurred at the victim's grandmother's house. The first took place in the bedroom, after which the victim wrote a letter to her parents reporting being raped and asking for help. The second occurred in the living room while defendant and the victim sat on the couch watching television.

Defendant requested assignment of counsel at his arraignment in January 1989. The trial court appointed counsel to represent defendant at a bail review hearing, but shortly thereafter defendant advised the court he wished to represent himself. After being informed of the complexity and gravity of the charges against him, defendant agreed to utilize court-appointed counsel on a consulting basis and signed a waiver-of-counsel form.

The court granted the State's motion to videotape the testimony of the victim and ordered appointed counsel to appear to assist in the cross-examination of the victim. With the court's permission, defendant left the videotaping prior to the victim's testimony, instructing his counsel to forego cross-examination. At the next hearing, defendant reiterated his decision to represent himself and signed a second waiver-of-counsel form. Appointed counsel appeared for defendant during trial in a standby capacity, occasionally arguing motions and questioning witnesses.

At trial, the State called the investigating officer, a Department of Social and Rehabilitation Services (SRS) caseworker, and a counselor on contract with SRS. All three testified to having substantial training and experience in the area of child sexual abuse. The counselor offered testimony, which implied that the alleged abuse had in fact occurred, to explain the victim's difficulty in talking about the incidents. The officer and the caseworker offered their opinions of the complainant's character for truthfulness. Defendant took the stand and consistently maintained his innocence. The jury returned guilty verdicts on both counts.

Both a presentence investigation report (PSI) and a psychosexual evaluation of defendant endorsed the maximum sentence of ten years based on defendant's extreme denial respecting his offenses. The judge sentenced defendant to consecutive terms of eighteen months to five years.

I.

Defendant's first assignment of error is that Linda Cope, who was offered and accepted as an expert on child sexual abuse, impermissibly commented on complainant's credibility. We agree.

Ms. Cope is a certified mental health counselor who worked under contract with SRS to provide treatment for victims of sexual abuse and their families. In this capacity she first met with complainant in April 1989. She has provided individual and group counselling to complainant since that time. The following testimony was elicited on direct examination:

Q: Miss Cope, what kind of psychological effect has the alleged abuse had on [complainant]?

A: Well, [complainant] was about eleven at the time the abuse occurred. Now she's twelve and she's coming into puberty. One of the things that happens to children of that age when they're sexually abused is that it creates a great deal of shame and embarrassment because it induces trauma on the level of your developing body . . . .

Q: Would it be fair to say that in your opinion, the abuse is interfering with [complainant's] development?

At this point defendant objected on the ground that the abuse was still only alleged, not proven, and should be referred to as such. The court agreed, and the questioning continued as follows:

Q: Would it be fair to say that the alleged abuse is interfering with [complainant's] development?

A: Yes. . . .

. . . .

Q: You mentioned [complainant] has some negative feelings about herself as a result of the alleged abuse. Could you describe those feelings to the jury?

A: Well, I would call them—it's shame. It's basically shame. She calls it embarrassment. It precludes her ability to really, really talk about it in a way that will kind of help her see the issues clearly. She has a real hesitancy to talk about it. When she began—when she made her statement originally, the social workers all had to leave the room so that she could talk into the tape-recorder to tell the incident because she was so humiliated and felt so bad about it. And even while she was in the room all by herself, with the tape-recorder she still needed to whisper into the tape-recorder. It was that kind of shameful experience.

Q: So it's difficult for [complainant] to talk about the alleged abuse?

A: Yes.

Defendant also claims error in two additional colloquies between the prosecutor and Ms. Cope. Having stated that complainant was able to distinguish between a "good" touch and a touch of an overtly sexual nature, Ms. Cope was asked, "Does her recognition of the distinction have an impact on the degree of her traumatization?," to which Ms. Cope responded affirmatively. When asked to give her opinion as to why complainant continued to go to her grandmother's home "after the first incident of abuse," even though defendant was still there, she responded:

I mean, she was caught between a rock and a hard place. She needed to get to grandmother's, but there was also something else that was very difficult for her going on at grandmother's.

. . . .

[Complainant] told what happened to her about the sexual abuse because she needed to stop it to make Gram's a safe place again for her.

### A.

Expert testimony in a criminal child sexual abuse case is admissible to help jurors understand "the emotional antecedents of the victim's conduct" so that they "may be better able to assess the credibility" of the victim. *State v. Catsam*, 148 Vt.

366, 369, 534 A.2d 184, 187 (1987). It is improper for the expert to give testimony that is "tantamount to a direct comment that the complainant was telling the truth about the alleged sexual assault." *Id.* at 370, 534 A.2d at 187. Further, it is improper for the expert to testify, on the basis of behavior exhibited by a complainant after the alleged abuse, that the complainant is a victim of sexual abuse. *State v. Gokey*, 154 Vt. 129, 134, 574 A.2d 766, 768 (1990). The overriding concern with expert testimony in this type of case is that the jury will perceive the expert as a "truth detector." *State v. Wetherbee*, 156 Vt. 425, 431, 594 A.2d 390, 393 (1991). This infringes on a defendant's constitutional right to a jury trial, as it invades the exclusive province of the jury to determine the credibility of witnesses. *Id.* at 431–32, 594 A.2d at 393; *Gokey*, 154 Vt. at 140, 574 A.2d at 771; *Catsam*, 148 Vt. at 371, 534 A.2d at 188. It is also suspect because of the substantial doubt that experts can make a reliable determination of a sexual abuse complainant's credibility. *Wetherbee*, 156 Vt. at 431, 594 A.2d at 393. The fact that a complainant displays symptoms similar to those displayed by children who have been sexually abused is not usually sufficient to allow an expert to testify that that particular complainant has been sexually abused. *Gokey*, 154 Vt. at 134–35, 574 A.2d at 772; accord *People v. Beckley*, 434 Mich. 691, 722–23, 456 N.W.2d 391, 405 (1990) (evidence of child sexual abuse syndrome "is not intended as a diagnostic tool for detection of sexual abuse. Thus, it has no probative value in terms of being able to detect sexual abuse on the basis of the existence of certain behavioral characteristics.").

This proscription is not only on direct comments, but also on testimony that is "tantamount to a direct comment." *Catsam*, 148 Vt. at 370, 534 A.2d at 187; accord *State v. Batangan*, 71 Haw. 552, 559, 799 P.2d 48, 52 (1990) ("[W]here the effect of the expert's opinion is 'the same as directly opining on the truthfulness of the complaining witness,' such testimony invades the province of the jury.") (quoting *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986)). Thus, in *Catsam*, the expert's negative response to the prosecutor's question "Do children make up stories about sexual abuse as part of the syndrome that you describe?" was held to be tantamount to a direct comment that the complainant was telling the truth. *Catsam*, 148 Vt. at 368,

370, 534 A.2d at 186, 187. In *Wetherbee*, the expert related what the child had told him about the abuse, including the name of the abuser. 156 Vt. at 432, 594 A.2d at 393. We stated that "[a]lthough the psychologist did not explicitly voice his opinion that the victim was truthful, his testimony, when viewed in context, gave the distinct impression that he believed her." *Id.* This impression of belief warranted reversal. See *Gokey*, 154 Vt. at 137–38, 574 A.2d at 770 ("[Expert's] graphic retelling of the child's description of the events, her comments about the child's ability to distinguish truth from falsehood, and her conclusory remarks about 'this victimization' were all beyond the pale . . . .").

The questions posed by the prosecutor in this case could not be answered without conveying the expert's belief that complainant was truthful and sexual abuse had occurred. For example, the prosecutor asked, "Miss Cope, what kind of psychological effect has the alleged abuse had on [complainant]?" If Ms. Cope did not believe that sexual abuse had occurred, she simply could not have answered this question. Preceding "abuse" with "alleged" does not save the question, because once the expert testifies as to the psychological effect that has been caused, the abuse has been removed from the realm of allegation to the realm of fact. By answering the question, Ms. Cope could not help but create the impression that she believed complainant's account of the abuse. As it was, Ms. Cope's answer unmistakably stated that abuse had occurred: "Well, [complainant] was about eleven at the time the abuse occurred." Ms. Cope responded affirmatively when asked "Would it be fair to say that the alleged abuse is interfering with [complainant's] development?" Again, necessarily implicit in her answer was that she believed complainant's account of the abuse. This is true of the other statements pointed to as erroneous by defendant. This testimony was improper.

This case demonstrates the dangers, pointed to in *Wetherbee*, of attempting to explain to the jury the emotional antecedents of a child sexual abuse complainant's conduct through expert testimony concerning the particular complainant. *Wetherbee*, 156 Vt. at 433, 594 A.2d at 394. See also *Gokey*, 154 Vt. at 138 n.6, 574 A.2d at 771 n.6 ("An obvious danger attending the use of the expert's testimony is that throughout her interview with the

child she assumed the truth of the allegations underlying this trial."). The conduct of a child who has been sexually abused, and the emotional antecedents underlying this conduct, can be effectively explained to the jury through testimony relating to the class of victims in general. See *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 777 (1987) (explaining complainant's delay in reporting abuse through expert testimony that delay is common); see also *State v. Moran*, 151 Ariz. 378, 382–83, 728 P.2d 248, 252–55 (1986) (expert testimony explaining the emotional antecedents of child sexual abuse complainant's conduct should be generalized, not particularized); *People v. Roscoe*, 168 Cal. App. 3d 1093, 1099, 215 Cal. Rptr. 45, 49 (1985) (expert testimony permitted to rehabilitate complainant's credibility must be limited to discussion of victims as a class); *State v. Spigarolo*, 210 Conn. 359, 380, 556 A.2d 112, 123 (1989) (expressing preference for "expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims"). While we have not, as yet, gone as far as these other jurisdictions in limiting particularized testimony, see *Gokey*, 154 Vt. at 136–37, 574 A.2d at 769–70, we have repeatedly found use of particularized testimony to be error. Expert testimony concerning the particular complainant must be approached with caution, as it too often slips into impermissible comment on the complainant's credibility.

## B.

 Defendant's objection at trial concerning omission of the word "alleged" was not sufficient to preserve defendant's objection on appeal that Ms. Cope impermissibly commented on complainant's credibility. "'An objection on one ground to the trial court does not preserve a claim of error on appeal based on other grounds.'" *State v. Callahan*, 155 Vt. 571, 578, 587 A.2d 970, 974 (1991) (quoting *In re R.L.*, 148 Vt. 223, 227, 531 A.2d 909, 911–12 (1987)). Accordingly, our review is limited to plain error. V.R.Cr.P. 52(b). "Plain error will be found 'only in a rare and extraordinary case where the error is an obvious one,' and only if the error affects substantial rights of the defendant." *State v. Ross*, 152 Vt. 462, 468, 568 A.2d 335, 339 (1989) (citations omitted).

This Court has never found an expert's impermissible comment on a child sexual abuse complainant's credibility to be

plain error. See, e.g., *State v. Calloway*, 157 Vt. 217, 222, 596 A.2d 368, 371 (1991); *Ross*, 152 Vt. at 467–70, 568 A.2d at 338–40; *State v. Recor*, 150 Vt. 40, 45–46, 549 A.2d 1382, 1386–87 (1988); *State v. DeJoinville*, 145 Vt. 603, 604–05, 496 A.2d 173, 174–75 (1985). When the substance of the testimony in this case is compared with that in the foregoing cases, it is difficult to conclude that plain error was committed here. In *DeJoinville*, no plain error was found despite the fact that the expert expressly testified about the credibility of child sexual abuse complainants. 145 Vt. at 604, 496 A.2d at 174. In *Recor*, the expert stated that the consistency of a child's statements "gives me a sense that what they are saying happened, happened." 150 Vt. at 45, 549 A.2d at 1386. In *Ross*, the expert not only detailed the complainant's sexual activity with the defendant as told to her by the complainant, and not only stated that young children do not fabricate stories of sexual abuse, but also expressly concluded that the complainant had been sexually abused by the defendant. 152 Vt. at 467–68, 568 A.2d at 339. In *Calloway*, this Court denied defendant a new trial despite the fact that the expert stated on cross-examination that "[c]hildren who make accusations of sexual abuse are generally telling the truth." 157 Vt. at 221, 596 A.2d at 371.

█ Here, the prosecution did not elicit expert testimony for the improper purpose of commenting on complainant's credibility or stating that abuse had occurred. The error in Ms. Cope's testimony lay solely in the manner in which it was adduced. The prosecutor's questions and Ms. Cope's answers implicitly assumed the truth of complainant's account of the abuse. While conveying the implicit assumption to the jury was error, this did not, especially in light of the purpose for which the testimony was adduced, amount to plain error. Ms. Cope's testimony constituted only eleven of the over two hundred transcript pages of trial testimony, five of which were devoted to qualifying her as an expert. Further, the parties did not repeat or emphasize her testimony to the jury during closing arguments. The lack of emphasis is a proper consideration in finding no plain error. See *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985).

We conclude that Ms. Cope's testimony was not plain error.

## C.

Defendant also objects to testimony by Officer Whipple and SRS caseworker Diane Dexter, who both testified to specialized training and experience in the area of child sexual abuse. Defendant made no objection, which limits our analysis to plain error. Defendant takes issue with Officer Whipple's testimony that when he first met with defendant, he told him that he believed complainant and not defendant. The trial court sua sponte intervened at that point, expressed its concern with Officer Whipple testifying as to believability, and instructed the jury to disregard the testimony for that purpose. We find no plain error requiring reversal. See *Calloway*, 157 Vt. at 222, 596 A.2d at 372 (immediate curative instruction a factor in finding no plain error). Nor do we find plain error in Ms. Dexter's explanation that complainant was placed in a foster home because her parents failed to protect her by allowing her to go to the grandmother's house "where the incidents had occurred."

Defendant's more substantial contention is that the prosecutor committed plain error by eliciting opinions from these two witnesses, under V.R.E. 608, that complainant's character was truthful after her character for truthfulness had been attacked. We agree that Rule 608 opinions by witnesses such as these must be approached with caution.

First, we recognize that where a witness knows a complainant only through the case at trial, the witness's opinion that the complainant has a truthful character is tantamount to an opinion that the complainant's allegations in the case are true. It is no longer an opinion as to the complainant's character for truthfulness, but is an opinion as to the complainant's truthfulness on this occasion. If this is so, the witness's opinion should be prohibited for failing to meet the foundational requirements of Rule 608. See *United States v. Dotson*, 799 F.2d 189, 193–94 (5th Cir. 1986) (excluding government agents' Fed. R. Evid. 608 opinions as to defendant's character for untruthfulness where only basis for opinions was their criminal investigation of defendant), *discussed with approval in* 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[04], at 608–26 (1988).

Second, even if the foundational requirements are met, opinions as to a complainant's character for truthfulness by witnesses such as these are dangerous because such opinions are

too easily taken for expert comment on the credibility of the complainant's allegations. Where the witnesses have testified to specialized training and experience in the area of child sexual abuse, and have applied this training to the case being heard, it is difficult to avoid the impression that their opinions as to a complainant's character for truthfulness are expert opinions as to the truthfulness of the complainant's allegations. This impression can violate the spirit of *Catsam* and its progeny, and should be avoided.

█ Defendant did not, however, object to admission of these opinions, and we cannot conclude that their admission was plain error. The foundational bases for the witnesses' opinions were left unexplored precisely because no objection was made. Defendant should not be able to capitalize on this failure, and we will not consider the opinions erroneous because foundational bases were not demonstrated. Further, we do not consider the infringement on *Catsam* and its progeny to be so obvious as to constitute plain error.

## II.

### A.

██ ██ Defendant also argues that the two informations, supported by a single affidavit, violated his state and federal constitutional rights to fair notice of the charges against him. Defendant did not object below to the sufficiency of the informations. "If the sufficiency of an indictment or information is not questioned at the trial, the pleading must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted . . . ." 1 C. Wright, Federal Practice and Procedure § 123, at 354–55 (2d ed. 1982) (footnote omitted); see *State v. Francis*, 151 Vt. 296, 308–10, 561 A.2d 392, 399–400 (1989) (applying plain error analysis to sufficiency of information where no objection was made below). This inquiry is not answered, as the State seems to contend, by the fact that defendant subjectively understood the informations. It is an objective inquiry. *State v. Phillips*, 142 Vt. 283, 288–89, 455 A.2d 325, 328 (1982). In determining the sufficiency of the informations, we do not read them in isolation. We consider the informations together with the ac-

companying affidavit of probable cause. *State v. Stanislaw*, 153
Vt. 517, 526, 573 A.2d 286, 291 (1990); *State v. Christman*, 135
Vt. 59, 61, 370 A.2d 624, 626 (1977). We cannot conclude, under
an objective inquiry, that the informations read together with
the affidavit were so defective that they did not, by any reason-
able construction, give adequate notice of the charged offenses
for which defendant was convicted.

## B.

Defendant argues that the court erred in failing to require
the presence of standby counsel at certain pretrial hearings.
Defendant was represented by appointed counsel until he insis-
ted on proceeding pro se because, in his words, "I don't really
feel that there's anybody really qualified to represent me as
well as I can myself." Defendant did state, in response to the
court's warnings about the complicated nature of criminal de-
fense, that "as far as the ins and outs of the system is con-
cerned, it may be good for me to be able to counsel with
someone as far as knowing which moves to make and which
moves not to make." The court gave defendant the option of
having counsel sit in on hearings to assist him. Defendant re-
sponded: "If we could take that kind of one step at a time. I'm
not certain if that's something that I'd like to have done or not
but it would probably be good to have that option open." The
court then made the following accommodation: "If at anytime
you wish to have [counsel] sit in for any hearing, then I would
suggest that you just simply give him a call and I'm going to ask
[counsel] in that instance to come to court." Defendant never
availed himself of this option and did not have counsel present
with him in court until the videotaping of complainant's testi-
mony and trial.

"A criminal defendant does not have an absolute
right to both self-representation *and* the assistance of counsel.
Whether to allow hybrid representation remains within the
sound discretion of the trial judge." *United States v. Halbert*,
640 F.2d 1000, 1009 (9th Cir. 1981). "[I]f the district court ha[s]
discretion to deny hybrid representation outright, it ha[s] dis-
cretion, in granting defendant's request for hybrid representa-
tion, to place reasonable limitations and conditions upon the
arrangement." *United States v. Nivica*, 887 F.2d 1110, 1121 (1st

Cir. 1989). We will reverse a trial court's discretionary decision only if its discretion was totally withheld or exercised on grounds clearly untenable or unreasonable. *State v. Dorn*, 145 Vt. 606, 616, 496 A.2d 451, 457 (1985). We cannot conclude that the arrangement created by the court, allowing counsel to attend the hearings should defendant request his presence, was an abuse of discretion. This was a reasonable accommodation of defendant's rights to self-representation and assistance of counsel. Further, the record indicates that defendant was in communication with this counsel. Defendant stated that he consulted with counsel "from time to time," and that "he's been real good." The court did not err.

## C.

Defendant argues that a core aspect of his right of self-representation—the right "to question witnesses," *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984)—was abridged by the requirement that defendant ask his questions of complainant through an attorney. Defendant's argument fails because he consistently disavowed any intent to question complainant. When the court asked defendant whether he was willing to have an attorney question complainant, defendant responded:

> [The prosecutor] has implied that we had an interest in cross-examining [complainant], and it was pointed out very clearly in April that we had no such intention, and it's been mentioned most recently that we have no intention of questioning [complainant]. We have no questions to ask her whatsoever. . . .
>
> . . . .
>
> What I'm saying is, I don't have any interest in questioning [complainant]. I never have had any interest in questioning [complainant].

The court had to order defendant to appear at the taking of complainant's testimony, and he left prior to his opportunity for cross-examination. Defendant's right "to question witnesses" was not violated. Further, insofar as the right of self-representation encompasses "the jury's perception that the defendant is representing himself," *id.* at 178, this perception was not infringed upon here. Counsel did not intrude on this perception

because he declined to conduct any cross-examination of complainant, stating that defendant was appearing pro se and he was "going to respect [defendant's] directions."

Because of this factual background we need not, and do not, reach the issue of whether requiring a pro se defendant to ask questions of a minor victim through the voice of standby counsel is constitutional error. We do note, however, that the one relevant decision to date rejects such an argument. *State v. Taylor*, 562 A.2d 445, 454 (R.I. 1989); cf. V.R.E. 807(d) ("Only the court and the attorneys for the defendant and for the state may question the child. In pro se proceedings, the court may modify the provisions of this subsection relating to the role of the attorney for the defendant.").

### D.

Defendant argues, in the alternative, that appointed counsel was ineffective because he did not cross-examine complainant. When offered the opportunity to cross-examine, counsel stated:

> I've been instructed by my client not to cross-examine, and it's my understanding that he is still appearing pro se in this matter, that I am at this deposition to protect his rights. But based upon the fact that he is pro se, consequently his own counsel of record, I am going to respect his directions to me and not cross-examine [complainant] at this time.

"The *pro se* defendant must be allowed to control the organization and content of his own defense . . . ." *McKaskle*, 465 U.S. at 174. Counsel acceded to defendant's express choice not to cross-examine complainant. Such accedence may have been constitutionally required, and certainly is not a valid basis for objection.

### E.

Defendant's final contention is that the court's consideration, at sentencing, of defendant's continued denial of his crime impermissibly penalized his constitutional privilege against self-incrimination. Both the presentence investigation report and a psychosexual evaluation found that defendant was in "an extreme degree of denial with respect to his offense." Defendant

objected to consideration of his denial, asserting that "I haven't acknowledged doing anything wrong from the beginning and I'm not about to acknowledge doing anything wrong today. I'm concerned about the . . . State using the sentencing process as a lever to extort a confession." The sentencing court considered

> the degree to which the defendant is willing to acknowledge whatever particular antisocial habits or drives that he or she may have, such that there's some belief that the person is amenable to some treatment so that the same kind of events are not going to happen in the future.

The court felt that probation would not be useful for defendant in his present state of denial because "[t]here's absolutely no reason to believe that [he would] function in any way on probation other than to continue [his] manipulative denial." The prosecutor testified that if defendant discontinued his denial and admitted the nature of his offense, three years would still be necessary to effectuate sex offender treatment. Defendant received consecutive sentences of eighteen months to five years on the two counts.

While we have not previously considered whether a defendant's denial of guilt during the presentence phase may be considered at sentencing, in *State v. Noyes*, 157 Vt. 114, 119, 596 A.2d 340, 342 (1991), we held that the sentencing court may consider the testimony and demeanor of the defendant during trial. Once a guilty verdict is reached, over a defendant's insistence of innocence, the court may take "defendant's lying into account." *Id.* at 119, 596 A.2d at 343. In the present case, defendant actively maintained his innocence throughout the trial and the presentence investigation. Whether we label his statements as "lying" or "denial," the sentencing court may properly consider a defendant's refusal to acknowledge his crimes. We discern no reason for that court to distinguish between denial expressed at trial and denial expressed during the presentence phase.

 A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing. They constitute important steps toward rehabilitation. Where they are present, a reduction in sentence can be appropriate. Likewise, denying this reduction,

where there are no acknowledgements, can be appropriate and does not penalize a defendant's privilege against self-incrimination. We "'are unprepared to equate the possibility of leniency with impermissible punishment.'" *United States v. Parker*, 903 F.2d 91, 105 (2d Cir. 1990) (quoting *United States v. Henry*, 883 F.2d 1010, 1011 (11th Cir. 1989) (per curiam)); accord *United States v. Gonzalez*, 897 F.2d 1018, 1021 (9th Cir. 1990). If we were to characterize the denial of a reduction as a penalty, it "would be to say that defendants who express genuine remorse for their actions can never be rewarded at sentencing. This the Constitution does not require." *Henry*, 883 F.2d at 1012. See also *Brady v. United States*, 397 U.S. 742, 753 (1970) (not unconstitutional to extend a benefit to defendant who demonstrates a willingness to accept rehabilitation). Defendant has not demonstrated that the court did anything other than deny him a reduction, and, accordingly, there was no violation of his privilege against self-incrimination.

*Affirmed.*

**Morse, J.,** dissenting. I respectfully dissent because several factors prompt me to conclude that plain error was committed here.

In my dissent in *State v. Ross*, 152 Vt. 462, 474, 568 A.2d 335, 342 (1989), I stated in describing the plain error doctrine:

> The first requirement recognizes that a trial judge cannot reasonably be expected sua sponte to correct an error unless the error is an obvious one. The second requirement emphasizes only that an error will not be deemed plain unless it is very serious or very prejudicial . . . .

The Court fails to address why *DeJoinville, Catsam, Hicks, Recor,* and *Ross*—all decided before trial of this defendant in October 1989—did not cause the analysis of expert-comment-on-victim-credibility, by then sufficiently evolved, to be recognized as plain error. The Court's reliance on these cases as precedents for absence of plain error is tantamount to indelibly labeling this type of error never plain. Evolution of our case law in this area should make errors plain that once were not, and the Court's approach reverses that evolution.

I think that plain-error analysis is so fact-based that prior cases about plain error are relatively weak indicators. There-

190

fore the decision about plain error must turn largely on the facts of each case. Here, the Court does not address the evidence other than the forbidden testimony, and gives no indication how prejudicial to defendant the inadmissible evidence was in light of other evidence and how it might have affected the outcome. I also believe that by "using an expert to bolster the credibility of the complaining witness, the State [may] intrude [ ] on the core function of the jury." *Ross*, 152 Vt. at 475, 568 A.2d at 343. Here, the Court's reliance upon prior cases is inadequate to assess the prejudicial effect of the testimony of Linda Cope, Officer Whipple, and Diane Dexter upon this jury. Further, this inadequacy is magnified because the Court underestimates the effect of testimony recognized as "dangerous because . . . [it is] too easily taken for expert comment on the credibility of the complainant's allegations." To determine the harmful effect of the inadmissible testimony, the relevant facts must be analyzed.

The child testified by videotape, telling the jury that at her grandmother's house she was once molested in a bedroom by defendant ejaculating onto her pants and another time on a couch when defendant rubbed her backside under her clothes and attempted to touch her "private place." The child said she felt sad and angry about these incidents and feared defendant would do something bad again.

The defendant took the stand, denied any wrongdoing and refuted details of the State's case by saying he was at the grandmother's home as a cleaning person and babysitter for the child. Part of his role, he explained, was to require the child to clean up after herself, go to bed early, and fold her bedclothes, something not required of her in her own home. Describing the child as "cold and vindictive," defendant claimed that his discipline caused the child to become so upset that she lied about her relationship with him. Defendant denied that anything occurred in the bedroom and said that the "couch" incident was merely an innocent massage, which the child requested.

Corroborating testimony, introduced to substantiate either the child's or defendant's version of their relationship, included observations of the child's mother that defendant would buy "practically anything [her] daughter wanted." The child's case-

worker, Diane Dexter, stated that after the abuse the child feared defendant. The child's grandmother testified by deposition that the child and defendant liked each other and were friends, downplaying any physical incidents between them, and saying that the child often lied and that her parents were angry with defendant because he would not bring them alcohol.

The Court's opinion describes other evidence, finding it to have impermissibly bolstered the child's credibility. The credibility-bolstering testimony of Linda Cope, who the trial court acknowledged as an expert on child sexual abuse, was given immediately after the jury viewed the taped testimony of the child. In addition to the testimony which the Court outlined, the expert volunteered testimony that the child, "like many children, would never have told something like that," and "usually kids don't tell."

The impermissible expert testimony of Linda Cope might, in itself, rise to the level of plain error, especially in a case where no corroborating witness observed the abuse. See *Ross*, 152 Vt. at 465, 568 A.2d at 337 (brother of victim an eyewitness to the sexual abuse). Where additional impermissible testimony is considered, however, little doubt remains that defendant's chances of prevailing were greatly disadvantaged.

Officer Whipple, who investigated the allegations, directly commented on credibility by saying to the jury that he believed her and thought defendant was lying. Officer Whipple stated to the jury that "I have had . . . in excess of 400 hours in specialized training in the investigation of child abuse." He went on to say, "I would estimate that I investigate on the average of thirty to forty [child abuse cases] a year, and that would be over the past five years." Whipple then testified that he told defendant, after questioning him at the Barre Police Department, "I did not believe . . . what he was saying and that I believed what the child had told me." The court admonished the jury not to consider the officer's opinion about the credibility of the child. Yet, in the State's rebuttal the officer testified, "I find her to be truthful."

The child's SRS caseworker, Diane Dexter, was also recalled to testify. Dexter testified that she had specialized training and experience in the field of child sexual abuse investigation and

case management. When asked whether she had an opinion about the child's honesty, Dexter commented, "I believe that she's a very honest child." When the witness was asked about the child's state of mind, the court cautioned: "I think it's a conclusion that a person with this woman's experience with children can draw, but let's understand that this is not an expert opinion. This is the opinion of an experienced person. There's a difference." The trial court was wrong—an opinion of an experienced person is an expert opinion. See V.R.E. 702. Here, the witness has expertise because of both experience and specialized training. The opinion of a person with this expertise must have a major impact on the jury. In short, Dexter's testimony on the complainant's credibility was another significant factor impermissibly bolstering the child's credibility.

Finally, defendant represented himself. We have recognized in the past that this is a significant factor in plain error analysis, *State v. Ayers*, 148 Vt. 421, 426, 535 A.2d 330, 334 (1987) (high unlikelihood pro se defendant would interrupt argument of prosecutor to object requires that trial judge take extra care and a failure to do so contributes to a finding of plain error). The court's response to defendant's status as a pro se litigant was insufficient in that it failed to keep inadmissible, highly prejudicial evidence from the jury.

The cumulative effect of the multiple errors, in my opinion, adds up to plain error requiring retrial. See *State v. McCarthy*, 156 Vt. 148, 155–57, 589 A.2d 869, 873–75 (1991) (multiplicity of errors contributing to the same improper impression of defendant relevant to plain error analysis).

I would reverse and remand. Justice Dooley joins in this dissent.