Vincent OLIVER, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1342.

District of Columbia Court of Appeals.

Argued Jan. 13, 1998.
Decided Feb. 11, 1998.*
Filed May 7, 1998.

Leonard E. Birdsong, with whom Stephanie Cobb Williams, Washington, DC, was on the brief, for appellant.

Rachel Adelman–Pierson, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney, and John R. Fisher, and Thomas C. Black, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, KING, and REID, Associate Judges.

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by direction of the court.

**PER CURIAM:**

■ Appellant Vincent J. Oliver was convicted of one count of enticing a minor child, in violation of D.C.Code § 22–4110 (1996).[1] On appeal, he challenges his conviction on five grounds: (1) the trial court abused its discretion by allowing the government to present expert testimony without giving him advance notice and the opportunity to provide his own expert; (2) the trial court should have granted his motion for a mistrial based on a conversation between a government witness and two jurors; (3) the trial court committed error in allowing the government to introduce "other crimes" evidence; (4) the evidence was insufficient to convict him beyond a reasonable doubt; and (5) the trial court abused its discretion in denying his motion for a new trial.[2] We affirm.

## I.

Complainant M.M. testified that Mr. Oliver took her and her cousins, all of whom were less than twelve years of age, on a camping trip. During the trip he asked her to get into his bed and then touched her private part with his hand. After the trip, M.M. told her grandmother and mother about the inci-

dent. Upon questioning by her mother and others, M.M. denied several times that Mr. Oliver had touched her in a sexual manner. M.M.'s mother testified that while M.M. initially said Mr. Oliver touched her, when she "took [M.M.] up in the room and ... had a nice talk [with her]," M.M. said that Mr. Oliver, who was also known as "Grandpa," did not touch her, but had touched another girl. According to M.M.'s mother, M.M. admitted that she accused Mr. Oliver of touching her because he had caught her stealing something from the Safeway.

After testimony by M.M.'s mother, the prosecutor informed the trial judge that she was surprised by the mother's assertion that M.M. had recanted her charge against Mr. Oliver. In response to the mother's testimony, the government asked the court for permission "to call an expert in child sexual abuse" for the purpose of providing information on "the psychology of recantations and failures to disclose ... by victims of child sexual abuse." The prosecutor proffered additional details as to the nature of the expert's proposed testimony.

Defense counsel opposed any testimony by an expert, saying in part:

One, we believe it's irrelevant to these charges or what's been presented. We

---

1. Mr. Oliver was charged with six counts of enticing a minor, each count involving a different minor. However, he was acquitted of two counts, and the trial court granted his motion for judgment of acquittal with respect to three other counts. A jury convicted him of one count, and he was sentenced to thirty to ninety months in jail.

2. We find no merit in Mr. Oliver's second, third and fourth arguments. The trial court found that in the presence of two alternate jurors during a lunch break while the trial was in progress, a government witness had referred to Mr. Oliver as "a dirty old man." After questioning the two jurors and excusing them from service, the court conducted a voir dire of all the jurors and determined that no other juror was aware of any remarks made to the two excused jurors. Thus, the jury deliberations could not have been influenced by the remarks of the witness. Accordingly, the trial court did not abuse its discretion in denying the motion for a mistrial. *Waller v. United States*, 389 A.2d 801, 805–807 (D.C.1978), *cert. denied*, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980).

The "other crimes" evidence about which Mr. Oliver complains was not classic "other crimes"

evidence, but was direct evidence relating to the other five counts in the indictment on which he was being tried. *Johnson v. United States*, 683 A.2d 1087, 1098 (D.C.1996) (en banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997).

Mr. Oliver contends that the government failed to prove he was four years older than the children he was accused of enticing. He was eighty years old at the time of his sentencing, and the child he was convicted of enticing was nine years old at the time of trial. Viewing the evidence in the light most favorable to the government, as we must, not only was it obvious to the jurors that Mr. Oliver was at least four years older than the child, but also the evidence showed that he had been taking children on camping trips for approximately twenty years. Mr. Oliver's other sufficiency argument is directed at the truthfulness of the child he was convicted of enticing. However, credibility determinations are left to the province of the jury. *Peterson v. United States*, 657 A.2d 756, 760 (D.C.1995). On the record before us, we are satisfied that the evidence was sufficient to convict Mr. Oliver beyond a reasonable doubt of enticing M.M.

believe it's not probative, and we believe it's just a matter of the Government trying to bolster a case that they can't put together.

Although defense counsel argues on appeal that the testimony of the expert violated Super. Ct.Crim. R. 16 because he was not "[given] advance notice and an opportunity to provide [his] own expert," this specific argument was not made in the trial court. He also contends that the expert's testimony was "highly prejudicial, irrelevant and deprived him of the opportunity to present his own expert."

### A.

■ We review Mr. Oliver's Rule 16 claim for plain error since there was no objection in the trial court based on this rule. Under the circumstances of its surprise by the testimony of M.M.'s mother that her daughter had recanted, the government acted in a timely manner to disclose its desire to call an expert, to proffer the substance of the expert's testimony and to provide information regarding the expert's credentials. We are satisfied that there was no violation of Rule 16. *Jackson v. United States,* 589 A.2d 1270, 1271 n. 2 (D.C.1991) (no violation of Rule 16 where government introduced defendant's statement into evidence mid-trial that it had just discovered). Furthermore, under the standard set forth in *United States v. Olano,* 507 U.S. 725, 733–37, 113 S.Ct. 1770, 1777–80, 123 L.Ed.2d 508 (1993), we cannot say that the trial court's decision, to permit the expert's testimony despite the absence of pretrial notice, affected any "substantial rights" to which Mr. Oliver was entitled. We see no merit in Mr. Oliver's contention that he was deprived of the opportunity to present his own expert. When the trial court ruled that the government could present an expert, Mr. Oliver expressed *no desire to call his own* expert, and did not request a continuance to seek an expert.

### B.

Because Mr. Oliver was charged with enticing, not child abuse, he maintains, the testimony of a child sexual abuse expert concerning the reason why sexually abused children recant was irrelevant and highly prejudicial. With respect to his prejudice claim, he points to a hypothetical question posed by the government regarding "what effect there is on the child when an adult questions or does not believe the child's story."

Ms. Kimberly Poyer, a licensed clinical social worker and expert in child sexual abuse, and child development and protection, based her testimony on research literature, and the approximately 700 sexually abused children whom she evaluated at Children's Hospital, Denver, Colorado, from 1990 to April 1996.[3] One of the research studies discussed by Ms. Poyer, a 1981 study by Sorensen and Snow of 116 children, revealed that about twenty-two percent of the children studied had recanted their testimony, but that ninety-three percent of those recanting children later reaffirmed their original charges of abuse. From a child development perspective, Ms. Poyer went on to explain the reasons why a child may recant testimony relating to abuse. These reasons included the status of an abuser as a trusted individual, or questioning by a significant adult who disbelieves the child. The prosecutor posed the following hypothetical question:

> [I]f a child feels that either they're not believed or they're being questioned what effect does that have on whether or not they recant their allegation?

After pointing out the "egocentric" nature of children and how they may initially blame themselves for their parents' divorce, Ms. Poyer stated:

> So in regards to if people aren't believing them the first thing they're going to look at is if the people that aren't believing them are the adults in their life the way they are developmentally set up is to say, well, all adults are right. You know, so if they're not being believed by the adults maybe they did something wrong.

---

**3.** At the time of her testimony, Ms. Poyer was employed by the U.S. Attorney's office (District of Columbia) as a child interview specialist.

Ms. Poyer went on to say that because children are egocentric, if they are abused by someone they know, "they may actually take some responsibility for the abuse and say it's my fault. And, therefore, since it's my fault for them to kind of resolve that crisis they're having they will recant."

### C.

■ "It is well established that a trial judge has broad discretion to admit or exclude expert testimony, and that a decision either way should be affirmed unless it is manifestly erroneous." *Spencer v. United States*, 688 A.2d 412, 417 (D.C.1997) (citations omitted). Expert testimony designed to " 'assist the jury to understand the facts in issue' " is permissible. *Id.* (quoting *Coates v. United States*, 558 A.2d 1148, 1152 (D.C. 1989)). This is true where the subject matter is " 'beyond the ken of the average layman.' " *Lampkins v. United States*, 401 A.2d 966, 969 (D.C.1979); *see also Ibn–Tamas v. United States*, 407 A.2d 626, 632 (D.C.1979). Other courts have held that "the behavioral characteristics of child molestation victims," or "the psychological dynamics of a victim of child sexual abuse, including the tendency towards partial disclosure and recantation" are beyond the ken of the average juror. *State v. Ransom*, 124 Idaho 703, 864 P.2d 149, 156 (1993) *cert. denied*, 510 U.S. 1181, 114 S.Ct. 1227, 127 L.Ed.2d 571 (1994); *Condon v. State*, 597 A.2d 7, 12 (Del.1991), *cert. denied*, 511 U.S. 1008, 114 S.Ct. 1378, 128 L.Ed.2d 53 (1994). However, courts generally do not permit experts to make direct credibility determinations in child sexual abuse matters, or to testify that a child has been sexually abused. *See Frenzel v. State*, 849 P.2d 741, 744 (Wyo.1993); *State v. Gokey*, 154 Vt. 129, 574 A.2d 766, 768 (1990); *Wheat v. State*, 527 A.2d 269, 274 (Del.1987).

■ Here, Ms. Poyer's testimony was relevant because it assisted jurors in understanding the psychology of an abused child's recantation. We do not regard it as unfairly prejudicial. Ms. Poyer provided no direct testimony as to the credibility of either M.M. or her mother. Indeed, Ms. Poyer had not spoken with M.M. or her mother. The mere fact that Ms. Poyer was an expert in child sexual and physical abuse was not prejudicial since the crime of enticing clearly involves a sexual offense. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.62 (III.), (4th ed.1993); *Hicks v. United States*, 658 A.2d 200, 203 (D.C.1995). Moreover, while Ms. Poyer's reference to the 1981 Sorenson and Snow study, and the government's hypothetical question concerning how children react when adults don't believe them, indirectly may have been some indication that M.M. could be believed even though she recanted, there was no comparison between the study's statistics and M.M.'s behavior, and no reference to M.M. or M.M.'s mother in the response to the hypothetical question. Thus, we are satisfied that the reference to the study and the response to the hypothetical question did not rise to the level of a favorable credibility determination in support of M.M. *See State v. Gokey, supra*, 574 A.2d at 771 ("By repeating to the jury precisely what the child. had told her and showed her in a drawing and with dolls, and by confirming the child's capacity to discern truth from falsehood, the State's witness impermissibly cloaked the child's testimony with a favorable expert opinion, imbued with scientific respectability and reliability"), (citation omitted), *Wheat v. State, supra*, 527 A.2d at 274 ("expert witness was [erroneously] permitted to evaluate the complainant's credibility in terms of statistical probabilities").

Given the factual circumstances of this matter, the research oriented testimony of the expert, and the absence of any comment by the expert as to the guilt or innocence of Mr. Oliver or the veracity of M.M., it was not "manifestly erroneous" for the trial judge to permit the expert's testimony. *Id.* Moreover, the testimony was relevant and not unfairly prejudicial.[4] Indeed, as the govern-

---

4. Mr. Oliver fails to offer good reason for his distinction between "enticing" and "child abuse" with respect to his opposition to the testimony of the expert. D.C.Code § 22–4110, under which he was convicted, provides in relevant part:

Whoever, being at least 4 years older than a child, takes that child to any place, or entices, allures, or persuades a child to go to any place for the purpose of committing any offense set forth in ... §§ 4108 and 4109 shall be impris-

ment indicates in footnote seventeen of its brief, other jurisdictions have admitted such testimony in cases involving child sexual abuse.[5]

## II.

Finally, Mr. Oliver argues that the trial court abused its discretion in denying his motion for a new trial. Mr. Oliver's motion was based on evidence of M.M.'s recantation which he maintains was discovered approximately one month after trial. Although Mr. Oliver knew before trial that M.M. had recanted her testimony, he claims he did not realize that she had recanted during an interview with an investigator in a related case in Maryland. The investigator had been retained by Mr. Oliver's Maryland counsel.

Mr. Oliver clearly knew before and *during* trial that M.M. had recanted. The record before us shows that the recantation to the investigator took place in June, prior to trial. With diligence, Mr. Oliver could have discovered the results of an investigation conducted through his Maryland attorney in a related matter. Furthermore, the newly discovered evidence here is clearly cumulative because M.M.'s mother testified at trial about M.M.'s recantation. Details concerning the time, place and person to whom the recantation was made simply added to the fact of the recantation. At the time of its deliberations the jury knew that M.M. had recanted, and that the defense theory was fabrication because M.M. had been caught stealing from a Safeway store. Based upon the record before us, we cannot say that additional details about the person to whom M.M. recanted, and the circumstances under which she recanted, would have result-

ed in Mr. Oliver's acquittal of the charge of enticing M.M.

" 'Absent a clear showing of abuse of discretion, decisions of the trial court regarding the denial of a new trial will not be disturbed on appeal.' " *Graham v. United States,* 703 A.2d 825, 830 (D.C.1997), (quoting *Smith v. United States,* 466 A.2d 429, 432 (D.C.1983) (other citations omitted)). Here, Mr. Oliver has made no clear showing of abuse of discretion by the trial court. As for Mr. Oliver's contention that he was entitled to a hearing on his motion, "[g]enerally a hearing is not required for a motion on a new trial." *Id.* at 831. (citing *Geddie v. United States,* 663 A.2d 531, 534 (D.C.1995)). Here, we are satisfied that the trial court's denial of Mr. Oliver's new trial motion is " 'reasonable and supported by evidence in the record.' " *Id.* (quoting *Townsend v. United States,* 549 A.2d 724, 726 (D.C.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989)).

For the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

oned for not more than 5 years and, in addition, may be fined in an amount not to exceed $50,000.

Sections 4108 and 4109 concern first and second degree child sexual abuse, respectively. Moreover, as one of the elements of enticing a child, the government must show that the defendant enticed, lured or persuaded a child to go with him *for the purpose of committing a sexual offense.* (emphasis added) CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.62 (4th ed.1993). The indictment charged Mr. Oliver with enticing M.M. "to go to a place for the purpose of engaging in a sexual act or sexual

contact with [her]." The statutory definitions of "sexual act" and "sexual contact" are couched in terms reflecting sexual abuse. *See* D.C.Code §§ 22–4101(8) and (9). Thus, we see no good reason in this case for Mr. Oliver's distinction between "enticing" and "child abuse."

5. *See, e.g., State v. Spigarolo,* 210 Conn. 359, 556 A.2d 112, 121–24, *cert. denied,* 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *State v. Black,* 537 A.2d 1154, 1156 (Me.1988); *State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 253–54 (1986).