Christopher P. GIRARDOT, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CF–109.

District of Columbia Court of Appeals.

Argued May 5, 2010.

Decided June 3, 2010.

Jonathan W. Anderson, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Keith Becker, Assistant United States Attorney. Ann K.H. Simon, Assistant United States Attorney, Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Mary B. McCord, and Kim A. Heard, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and KRAMER, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

■ This case involves a judgment of conviction for aggravated second-degree child sexual abuse.[1] Appellant, Christo-

---

1. The trial court found Mr. Girardot guilty of two counts of aggravated second-degree child

pher P. Girardot, contends that the trial court erred during his bench trial by precluding the testimony of a proposed defense witness, an expert in children's cognitive processes, and the pressures and factors that can prompt a child to make false complaints of sexual abuse. Consistent with our opinion in *Benn v. United States*, 978 A.2d 1257 (D.C.2009), decided after the trial court's ruling in this matter, we remand this case for consideration of the admissibility of the expert's proposed testimony "in accordance with the three criteria established in *Dyas [v. United States*, 376 A.2d 827 (D.C.1977) ]."[2] *Id.* at 1261.

## FACTUAL SUMMARY

Before trial commenced in this case, the defense lodged a notice of filing, indicating that it would seek to introduce expert testimony through Dr. Susan Robbins.[3] In response, the government filed a motion *in limine* to exclude Dr. Robbins's testimony.[4] Over a two-day period, between breaks in a motions hearing, the trial court held fairly extensive discussions with defense and government counsel about the proposed expert testimony. Initially, the trial judge declared that she did not have specific concerns about Dr. Robbins's qual-

ifications. Rather, her concern was relevance, that is, "[w]hether or not this is ... so outside of the ken of the [c]ourt that I can't make the factual determinations that could lead to a determination that a child is ... not credible for a variety of reasons." Throughout the discussions, the trial judge reiterated three themes: that both the subject area and the issues the court needed to decide were not beyond the court's or her ken; that she did not see how the testimony would be helpful to her; and that "her job is to assess credibility" and to "make determinations as to whether or not [she] believe[s] people." Furthermore the judge declared that she could make the necessary determinations with questioning of witnesses by counsel and the court. As the judge put it: "I don't see how this body of knowledge is outside of my ken such that the level and discernment that ... I've tried to articulate here does not address those issues with the right level of questioning on [defense counsel's] part or even on my part if I have some concerns." As the trial judge further posited: "Perception, memory ..., manifestations of falsity ... are all areas that are legitimate areas of cross-examination with the right questioning, with the right discernment on the part of the

---

sexual abuse, in violation of D.C.Code §§ 22–3009, –3020(a)(1) and (a)(5) (2001).

2. Proposed expert testimony must be scrutinized under the test articulated in *Dyas:*
   (1) the subject matter must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average lay [person]; (2) the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth; and (3) expert testimony is inadmissible if the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.

376 A.2d at 832 (internal quotation marks and citations omitted).

3. The ten-page notice provided detailed background information on Dr. Robbins, summarized the specific areas her proposed testimony would cover, and listed numerous works (articles and books) comprising the relevant scientific literature.

4. The government quoted the three *Dyas* criteria in its opposition, and essentially claimed that Dr. Robbins's proposed testimony was "irrelevant," failed to satisfy the *Dyas* admissibility standard, and was designed to "usurp" the fact-finder's credibility determination.

[c]ourt, inconsistencies, conflicts[ ] in testimony[,] relationships to issues of falsity"— "[a]ll of those things are things that I do routinely."

Defense counsel contended that the subject area was beyond the ken "because there have been specific scientific studies that the [c]ourt could not and [defense counsel] could not know about[,] that only an expert that's in that field could know about." Counsel stressed the science and the fact that more is involved than a credibility determination:

[Dr. Robbins] has an expertise in cognition[,] about how children make false allegations of child abuse. This is [n]ot just a credibility determination, that is the [c]ourt's job. This witness has done studies, has participated in specific cognitive studies about how false allegations manifest in children. It's just much different from a credibility determination.

Defense counsel provided a lengthy description of the specific areas Dr. Robbins would cover and how her testimony would be helpful to the fact-finder and the defense, particularly in assessing the video interview of the children, which was conducted at the Child Advocacy Center ("CAC"). The trial court inquired as to why defense counsel could not accomplish that same objective by examining fact witnesses with respect to "the interview techniques and ... the potential impact of those techniques ... vis-a-vis the value or the efficacy or the accuracy or the truth of the assertions being made of the person interviewed?" Defense counsel responded: "Quite frankly, because all of the science behind what ... the doctor can testify to is beyond my ken as well[,] [a]nd that's exactly why I would need to have an expert testify ..., because specifically what [Dr. Robbins] looks at with respect to inter-

viewing techniques, leading questions, suggestivity of an eight-year-old and a [ten]-year-old is quite honestly beyond my ken as well."

In addition to quoting the *Dyas* test in its written opposition to the defense's expert notice, government counsel orally opposed the testimony, at length, during the pre-trial hearing. She cited the three *Dyas* criteria,[5] discussed other case law, and argued that the proposed testimony did not meet any of the *Dyas* prongs. She concluded that the subject area here "is not beyond the ken of the average juror, and it's certainly not beyond the ken of the fact finder"; she added, "[e]specially in this instance, a very experienced trial court judge." She agreed with the trial court that the proposed testimony concerned credibility, and that defense counsel could cross-examine witnesses to show a lack of credibility. Government counsel contended that "the defense is merely attempting to transparently disguise it[ ]s attempt to have one witness comment on the credibility of another witness." She contested the relevance and helpfulness of many of the studies identified by Dr. Robbins, because they relate to "pre-school aged children" rather than eight and ten year-old children. In addition, she questioned the qualifications of Dr. Robbins, as well as the state of the science.

In reaching her decision to exclude Dr. Robbins's testimony, the trial judge reaffirmed her conclusion that the matters as to which Dr. Robbins would testify were not outside of the court's ken or her ken. The judge announced that she would not address the second and third criteria of the *Dyas* test.

At trial, the government presented as its major witnesses the two minor children

---

**5.** When she recited the first *Dyas* criterion, government counsel used the phrase "average juror" instead of "average layman" or "average lay person."

that Mr. Girardot allegedly abused sexually. J.B., who was nine-years-old at the time of trial, testified that Mr. Girardot, a neighbor and her father's friend, touched her inappropriately on two occasions. She described one event, which took place in late December 2005, in Mr. Girardot's living room. She was watching a movie with her father, appellant, her brother and two of appellant's sons. She sat on Mr. Girardot's lap on the same couch with one of his sons. Appellant touched her on her upper thighs and he was "rubbing" her on her "bladder ... and in between [her] thigh and [her] vagina." J.B. mentioned another event, but could not remember exactly when it occurred or the details. Eventually, in January 2006, she told her mother, and later, someone at CAC about the incidents.[6]

C.N., who was eleven-years-old when she testified, indicated that Mr. Girardot was part of her school carpool. C.N. visited his house on five occasions to watch movies or bake cookies. On the birthday of one of Mr. Girardot's sons, around December 2005, C.N. was in Mr. Girardot's living room, watching a movie with several of the children in her carpool. She was seated on appellant's lap when he "put his hands down [her] pants." He "went under [her] skirt and into [her] shorts," and "was rubbing [her] ... vagina." C.N. moved to the other couch in the living room and "sat down with her sister and [one of Mr. Girardot's sons]." After C.N.'s father told her "what happened to other girls with Mr. Girardot," C.N. tearfully informed her parents about the incident with appellant. She also spoke with the CAC.

The defense theory was general denial and fabrication by the children. Two of the other children who were in Mr. Girardot's living room at the time of the alleged incidents against J.B. and C.N. testified

that they did not see any inappropriate acts by Mr. Girardot. Appellant's wife stated that she and her husband had babysat for three of the B. siblings, including J.B., in December 2005, while their mother was away with the oldest sibling and their father was at work. When Mr. Girardot's wife was in the living room, J.B. was not on her husband's lap. During his testimony, appellant denied any inappropriate touching of the children.

## ANALYSIS

Mr. Girardot claims that the trial court erred by ruling that the proposed testimony of Dr. Robbins did not meet the first prong of the *Dyas* test, and by not ruling on the second and third *Dyas* criteria. Relying on two cases, *Mindombe v. United States*, 795 A.2d 39, 42 (D.C.2002), and *Oliver v. United States*, 711 A.2d 70, 72 (D.C.1998), he maintains, "The evidence which [he] sought to present here was simply the defense corollary of expert testimony presented by the prosecution in child sex abuse cases that this [c]ourt has already concluded is beyond the ken of the average lay person." He argues that the alleged trial court error was not harmless because "Dr. Robbins's testimony was crucial to the defense of fabrication." He asserts, in essence, that the exclusion of the expert's testimony impacted his cross-examination concerning two factors "commonly present in cases of false allegations of child sexual abuse": "concern on the part of the child that one of her parents may be leaving the family and exposure to sexual acts or language."

The government argues that Mr. Girardot's claim of error as to the first *Dyas* prong was not preserved because he stated in the trial court that "Dr. Robbins's proposed testimony was 'beyond the ken' of

6. The government used a transcript of the   CAC interview to refresh J.B.'s recollection.

the fact finder in this case, that is, beyond Judge Mitchell–Rankin's 'ken.' " Relatedly, says the government, appellant did not fault the trial judge for failing to apply the correct legal standard for the first *Dyas* criteria, whether the proposed testimony was "beyond the ken of the average lay person." Nor did he "fairly apprise" the trial court of the issue by citing the cases on which he now relies in this court. Hence, the government believes that this assignment of error is subject to plain error review. The government further contends that the first prong of *Dyas* does not apply where a trial judge sits as the fact finder in a bench trial, because "[e]videntiary rules pertaining to the admission and exclusion of expert testimony operate somewhat differently ... in a bench trial than they do in a jury trial." And, the government takes the position that even if the error was preserved, it was harmless.

### Applicable Legal Principles

■■■ Our analysis of the issues in this case is guided by the following legal principles. A trial judge " 'has wide latitude in the admission or exclusion of expert testimony, and [her or] his decision with respect thereto should be sustained unless it is manifestly erroneous.' " *Jones v. United States*, 990 A.2d 970, 977 (D.C.2010) (citing *In re Melton*, 597 A.2d 892, 897 (D.C.1991) (en banc) (quoting *Coates v. United States*, 558 A.2d 1148, 1152 (D.C.1989))). Where the admissibility issue has been preserved in the trial court, our review generally is for abuse of discretion. *Id.* If the issue has not been preserved and is raised for the first time on appeal, we apply the plain error standard of review. *Id.*

■■■ "Although the admission of expert testimony falls within the discretion of the trial judge, we have cautioned that because the right to confront witnesses and to present a defense are constitutionally protected, '[i]n exercising its discre-

tion, the trial court must be guided by the principle[ ] that the defense should be free to introduce appropriate expert testimony.' " *Benn, supra,* 978 A.2d at 1269 (citing *Hager v. United States*, 856 A.2d 1143, 1147 (D.C.2004); *Ibn–Tamas v. United States,* 407 A.2d 626, 632 (D.C.1979)) (internal quotation marks and footnotes omitted). Thus, the "evidence should be admitted if the opinion offered will be likely to aid the [jury or the trial court] in the search for truth." *Burgess v. United States,* 953 A.2d 1055, 1062 n. 6 and 7 (D.C.2008) (citing *Ibn–Tamas,* 407 A.2d at 632) (internal quotation marks omitted; alteration in original). In that regard, we have determined that "the behavioral characteristics and psychological dynamics of child molestation victims are beyond the ken of the average juror." *Jones, supra,* 990 A.2d at 978 n. 17 (citing *Mindombe, supra,* 795 A.2d at 42; *Oliver, supra,* 711 A.2d at 73).

■■■ "Fairness dictates a balanced judicial approach in permitting use in criminal trials of expert testimony concerning subtle psychological factors that might affect witnesses." *Benn, supra,* 978 A.2d at 1270. Moreover, "[i]n conducting its scrutiny of the proffer, the trial court must take no shortcuts; it must exercise its discretion with reference to *all* the necessary criteria; otherwise, the very reason for our deference to the trial court's ruling—*i.e.,* the trial court's opportunity to observe, hear, and otherwise evaluate the witness—will be compromised." *Burgess, supra,* 953 A.2d at 1062 (citing *Ibn–Tamas,* 407 A.2d at 635) (internal quotation marks, brackets and footnote omitted).

### Preservation of the Dyas First Prong Issue

■■■ We first address the government's contention that Mr. Girardot did not preserve the claimed error relating to the first

*Dyas* prong, and hence, our review is governed by the plain error standard. The government presses us to hold that because defense counsel did not specifically mention the *Oliver* case, Mr. Girardot waived the argument that, as a matter of law, the areas of Dr. Robbins's proposed testimony were beyond the ken of the average lay person. The summary of the trial court's discussion with defense and government counsel concerning Dr. Robbins's proposed testimony, detailed above, persuades us that Mr. Girardot preserved his claim that the trial court did not apply the correct legal standard with respect to the first *Dyas* prong, and thus, plain error review is inapplicable. Although the trial judge often articulated the first *Dyas* prong as whether the proffered testimony of Dr. Robbins' was outside of her personal ken or personal expertise, or was not helpful to her, defense counsel attempted to disabuse the trial court of the notion that the issue should be determined according to her ken; she argued that the question was broader than the trial court's personal knowledge and experience. Moreover, government counsel specifically referenced the *Dyas* test, and had quoted it in its written opposition to Mr. Girardot's notice about his proposed expert.

Defense counsel's extensive proffer sought to demonstrate to the trial court that more is involved in this case than the usual credibility determinations of the trial judge; that (1) for psychological reasons related to a child's cognition, children may make false allegations about child abuse, and (2) scientific studies, which have delineated these cognitive factors and psychological dynamics, will be helpful to the trial court in resolving this case, or as we said in *Burgess,* to "aid [... the trial court] in the search for truth." *Id.* at 1062 (brackets in original). Given the defense proffer and the government's specific reference to *Dyas,* we believe the trial court was "fairly apprised as to the question on which [she] [was] being asked to rule." *Bean v. Gutierrez,* 980 A.2d 1090, 1094 (D.C.2009) (citation omitted); *Hunter v. United States,* 606 A.2d 139, 144 (D.C.1992). Moreover, the fact that defense counsel did not cite *Oliver* by name was not fatal to Mr. Girardot's preservation of the *Dyas* first prong issue. *See Tindle v. United States,* 778 A.2d 1077, 1082 (D.C.2001) (right to counsel claim under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) was preserved even though defense counsel did not cite *Edwards* ). In short, we are satisfied that Mr. Girardot preserved the *Dyas* issue.

### Bench Trials and the Dyas Criteria

The trial court interpreted the first *Dyas* prong in terms of her own knowledge, not the ken of the average lay person. Similarly, after referencing *Dyas's* first prong during the pre-trial hearing, government counsel argued that Dr. Robbins's proposed testimony was "certainly not beyond the ken of the fact finder, ... [e]specially in this instance, a very experienced trial court judge." On appeal, the government states that "the trial judge studied [the] detailed proffer of Dr. Robbins's proposed testimony, read Dr. Robbins's curriculum vitae, and heard [defense] counsel's lengthy descriptions of the gravamen of Dr. Robbins's opinions and, after doing so, declared that the subject matter was known to her and, far from rejecting it, she 'routinely' applied the same factors when making reliability and credibility determinations." Thus, the government suggests that when the *Dyas* issue is presented in a bench trial, the proper standard is the "ken of the [presiding] trial judge," not that of the "average lay person."

We recognize the substantial judicial experience of the trial judge in this

particular case, and we do not dismiss the possibility that a future record on appeal may demonstrate that the trial judge's background is such that proposed testimony, similar to that in this case, is not beyond the ken of the trial judge. Here, however, the record is devoid of any information about the trial judge's knowledge, background, and experience with respect to cognitive studies of eight to ten year-old children, their behavioral characteristics, and the psychological dynamics which may prompt them to make false allegations of sexual abuse. Nor is there any information in the record as to how the factors on which trial judges rely to make routine credibility determinations mirror those which experts like Dr. Robbins identify as relevant to an assessment of whether an eight to ten year-old child has made false allegations of sexual abuse. In sum, we are left with a record indicating that the trial judge made a ruling based on her particular knowledge, but that particularized knowledge may well be beyond the ken of the average lay person. *See Poulnot v. District of Columbia*, 608 A.2d 134, 143 (D.C.1992) (in the absence of expert testimony, it was error for the trial judge to base his ruling on his own knowledge or perception of the rate at which the body metabolizes alcohol since that was "neither a matter[ ] of common knowledge nor capable of certain verification.").

Moreover, it would be exceedingly difficult to conduct appellate review of a matter based on the trial court's unstated personal knowledge or on such a subjective standard. This record is inadequate for us to make a principled conclusion that the ken of the trial judge who presided over Mr. Girardot's bench trial is equivalent, as a standard, to the ken of the average lay person with respect to a jury trial. *See Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 481 (3d Cir.1979) (rejecting application of a different standard to bench trials governing legal malpractice claims).[7] Furthermore, we have applied the "beyond the ken of a layman [or lay person]" standard in bench trials, even though it could be said that the trial court was competent to resolve the issue without the aid of an expert. *See Drevenak v. Abendschein*, 773 A.2d 396, 418 (D.C.2001) (medical malpractice); *Harris v. District of Columbia*, 601 A.2d 21, 25 (D.C.1991) (driving under the influence).

Therefore, we must determine whether the trial court applied an incorrect legal standard under our existing case law. We recognize, as important legal principles, that "the defense should be free to introduce appropriate expert testimony," *Benn, supra*, 978 A.2d at 1269 (internal quotation marks and citations omitted), and that "fairness" and "a balanced judicial ap-

7. What the Third Circuit stated in *Lentino*, albeit a different type of case, is instructive here. The court decided that "the better approach is to apply the same requirement to both bench and jury trials" with respect to the standard of care in legal malpractice cases because:

> First, although the judge may be competent to evaluate defendant's conduct in light of the relevant standard of care, the actual standard of care itself is a question of fact that is best left to the presentation of evidence with the opportunity for cross-examination and rebuttal. Second, we do not believe that a practicable standard exists

which takes into account the trial judge's knowledge. Such a subjective standard, which would allow the trial judge to use [her] own knowledge if [she] were familiar with the appropriate standard of conduct, would effectively change a question of fact-finding into one of discretion and require appellate courts to undertake the unwanted task of evaluating the trial judge's personal knowledge. Finally, in the interest of uniformity, we prefer not to unnecessarily establish a different substantive requirement for bench trials than for jury trials.

*Lentino, supra*, 611 F.2d at 481 (citations omitted).

proach" favor "permitting use in criminal trials of expert testimony concerning subtle psychological factors that might affect witnesses." *Id.* at 1270. We have emphasized that the trial court's "scrutiny of the proffer [concerning proposed expert testimony] 'must take no shortcuts'" and the court must "exercise its discretion with reference to *all* the necessary criteria," *Burgess, supra,* 953 A.2d at 1062 (internal quotation marks and citation omitted). Since the trial court did not apply the existing standard for the first *Dyas* prong and did not consider the second and third prongs, we are constrained to hold that the court abused its discretion. Therefore, we remand this case so that the trial court may re-visit the first *Dyas* prong and, as it has not yet done, apply the second and third *Dyas* prongs to the defense proffer of Dr. Robbins's proposed testimony.

*So ordered.*