*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CO-144

CHRISTOPHER P. GIRARDOT, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-3822-06)

(Hon. Zinora Mitchell-Rankin, Trial Judge)

(Argued November 19, 2013                    Decided June 12, 2014)

*Alice Wang*, Public Defender Service, with whom *James Klein* and *Jaclyn Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Stephen F. Rickard*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Amy Zubrensky*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and PRYOR, *Senior Judge*.

FISHER, *Associate Judge*: Appellant Christopher Girardot argues, for the

second time before this court, that he is entitled to a new trial because the trial

court excluded expert testimony. We hold that the trial judge did not exercise her discretion erroneously and therefore affirm.

## I. Factual Background

During Mr. Girardot's bench trial in 2006, the government relied upon the testimony of two victims, eight-year-old J.B. and ten-year-old C.N.[1] After hearing the evidence, the trial court found appellant guilty of two counts of misdemeanor sexual abuse, in violation of D.C. Code § 22-3006 (2001). Prior to trial, appellant had sought to introduce the testimony of Dr. Susan Robbins, "an expert in children's cognitive processes, and the pressures and factors that can prompt a child to make false complaints of sexual abuse." *Girardot I*, 996 A.2d at 343. We remanded appellant's case for a more thorough inquiry, instructing the trial court to consider all three prongs of the *Dyas* test for evaluating the admissibility of expert testimony.[2] *Girardot I*, 996 A.2d at 349.

---

[1] For a description of their testimony, see *Girardot v. United States*, 996 A.2d 341, 344-45 (D.C. 2010) (*Girardot I*).

[2] *Dyas v. United States*, 376 A.2d 827, 832 (D.C. 1977).

At an evidentiary hearing held on June 22 and June 23, 2011, Judge Mitchell-Rankin heard more than six hours of testimony and argument concerning Dr. Robbins' qualifications. Dr. Robbins returned to court and gave her substantive testimony on September 26, 2011. The trial court explained: "We're going to proceed as if the issue of qualifications has been resolved to get to the substantive . . . testimony." That testimony, which included direct examination, cross-examination, and redirect, spans 150 pages of transcript.

On February 2, 2012, Judge Mitchell-Rankin issued a twenty-three page order, comprehensively addressing the *Dyas* factors and again ruling that the testimony would be excluded. The court also stated that "Dr. Robbins' testimony did not provide any information that was helpful in evaluating the statements made by J.B. and C.N." Judge Mitchell-Rankin therefore found, in an alternative ruling, that "the testimony would not lead [her] to reach a different conclusion as to whether the Defendant was guilty beyond a reasonable doubt."

## II. The *Dyas* Analysis

"Although the admission of expert testimony falls within the discretion of the trial judge, . . . because the right to confront witnesses and to present a defense

are constitutionally protected, . . . 'the defense should be free to introduce appropriate expert testimony.'" *Benn v. United States*, 978 A.2d 1257, 1269 (D.C. 2009) (citations omitted). We will, however, "defer to the trial court's exclusion of expert testimony when it is based on a reasoned and reasonable exercise of discretion[.]" *Id*. at 1276. "[T]here is an important tradeoff for giving the trial court such latitude: that court must take no shortcuts; it must exercise its discretion with reference to *all* the necessary criteria." *Ibn-Tamas v. United States*, 407 A.2d 626, 635 (D.C. 1979) (emphasis in original) (citations omitted). Thus, "the court's determination must be case-specific, based on the proffered expert testimony," and "upon a consideration of each of the three separate criteria identified in *Dyas*."[3] *Benn*, 978 A.2d at 1278.

---

[3] There are "two levels of analysis to a trial court's ruling on expert testimony." *Ibn-Tamas*, 407 A.2d at 632. First, expert testimony must meet the following criteria:

> (1) the subject matter "must be so distinctively related to some science, profession, business or occupation *as to be beyond the ken of the average layman*;" (2) "the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or interference *will probably aid the trier in his search for truth*;" and (3) expert testimony is inadmissible if "the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.

(continued…)

## A. "Beyond the Ken"

In *Girardot I*, "we remand[ed] . . . so that the trail court may re-visit the first *Dyas* prong and, as it ha[d] not yet done, apply the second and third *Dyas* prongs to the defense proffer of Dr. Robbins's proposed testimony." 996 A.2d at 349. The first *Dyas* factor is whether the subject matter to be addressed by the expert testimony is "beyond the ken of the average layman." *Dyas*, 376 A.2d at 832 (emphasis omitted). Simply put, an expert "cannot testify to matters which 'the jury itself is just as competent' to consider." *Ibn-Tamas*, 407 A.2d at 632. In our previous examination of this case, we held that the "beyond the ken of a layman [or lay person]" standard applies to bench trials. *Girardot I*, 996 A.2d at 348.

---

(…continued)
*Dyas*, 376 A.2d at 832 (emphasis in original) (quoting E. Cleary, *McCormick on Evidence* § 13, at 29-31 (2d ed. 1972)). Second, "[e]xpert testimony admissible under the criteria of *Dyas* . . . is still subject to exclusion if the danger of unfair prejudice substantially outweighs its probative value." *Jones v. United States*, 990 A.2d 970, 977 (D.C. 2010); *see (William) Johnson v. United States*, 683 A.2d 1087, 1099 (D.C. 1996) (en banc) (adopting "the policy set forth in Federal Rule of Evidence 403—'evidence [otherwise relevant] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice'").

On remand, Girardot argued that "Dr. Robbins' proposed testimony is beyond the ken of the average layperson because it is simply the defense corollary of the expert testimony that the Court of Appeals [has previously] concluded was beyond the ken of the average lay person" when offered by the government. Appellant was referring to our cases holding "that the behavioral characteristics and psychological dynamics of child molestation victims are beyond the ken of the average juror." *Jones v. United States*, 990 A.2d 970, 978 n.17 (D.C. 2010) (citing *Mindombe v. United States*, 795 A.2d 39, 42 (D.C. 2002), and *Oliver v. United States*, 711 A.2d 70, 73 (D.C. 1998)). In *Mindombe*, we held that a child victim's response to sexual abuse could be misperceived by the jury and, therefore, an expert's explanation "serves a useful and necessary purpose at trial." 795 A.2d at 47. Similarly, in *Oliver*, we held that an expert's "testimony was relevant because it assisted jurors in understanding the psychology of an abused child's recantation." 711 A.2d at 73. Appellant asserts that, to level the playing field, the defense should "be permitted in appropriate cases to present expert testimony on psychological factors that can lead children to make false reports of sexual abuse."

Finding the "defense corollary" argument to be unsound, Judge Mitchell-Rankin distinguished *Mindombe* and *Oliver*, pointing out that Dr. Robbins'

testimony would "not address the psychological and behavioral characteristics of *sexually abused children*." This was not the end of her analysis, however.

The trial judge identified the premises underlying Dr. Robbins' opinions and analyzed "'the extent to which the [proffered] testimony will provide information that is not likely to be known by lay jurors.'" Quoting *Benn*, 978 A.2d at 1267. The witness had described the problems inherent in "leading or suggestive questioning, repetitive questioning, multiple choice questioning, and encouraging certain responses through praise and attention." The court concluded that "there is simply nothing counter-intuitive, inherently unique or scientific about the proposition that children can be misled and confused by the[se] types of questions"—"it is a matter of common sense[.]" Moreover, "[a]ny perceived bias on the part of the interviewer or in the format of the questioning can be fully explored by counsel through the presentation of evidence and effective cross examination. Well developed litigation skills and not expert testimony are required under these circumstances."

In sum, Judge Mitchell-Rankin was "satisfied that the average layperson is 'just as competent' as the proffered expert to address the issues presented in this case because the criteria . . . are no different than those which the average

layperson commonly uses to determine credibility, reliability and accuracy of information, and truth and falsity of a claim[.]"

Appellant argues that because Dr. Robbins' testimony involved summarizing the methods and results of psychological studies, it was necessarily beyond the ken of an average layperson. *See Benn*, 978 A.2d at 1277 ("[I]t cannot be said that psychological studies regarding the accuracy of an identification are within the ken of the typical juror." (citation omitted)). However, there can be no categorical rule requiring admission simply because academic studies will be discussed. Instead, the trial court must examine the basic principles on which the witness will rely. In this case, having listened at length to Dr. Robbins, the court concluded that "[t]he operative principles are a matter of common knowledge and are not difficult to understand. Couching these principles in technical terms does not render them otherwise."

## B. "Sufficient Skill, Knowledge, or Experience"

The second *Dyas* factor requires that the witness have "sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Dyas*, 376

A.2d at 832 (emphasis omitted). Judge Mitchell-Rankin found, however, that "Dr. Robbins' educational experience, work experience, and professional designations do not, individually or in the aggregate, demonstrate that she has sufficient skill, knowledge or experience in the field relevant to this case."

During the first appeal, Dr. Robbins was described as "an expert in children's cognitive processes, and the pressures and factors that can prompt a child to make false complaints of sexual abuse." *Girardot I*, 996 A.2d at 343. The defense sought to demonstrate "that (1) for psychological reasons related to a child's cognition, children may make false allegations about child abuse, and (2) scientific studies, which have delineated these cognitive factors and psychological dynamics, will be helpful to the trial court in resolving this case[.]" *Id*. at 347. However, the testimony which materialized on remand varied significantly from this proffer. Appellant argued below and again before this court that Dr. Robbins, a tenured professor of social work with more than thirty years of experience, was qualified to identify and discuss problematic questioning that occurred during the forensic interviews of J.B. and C.N.

In eleven pages of its order, the trial court carefully identified the gaps in Dr. Robbins' background and experience. In particular, Judge Mitchell-Rankin

explained that Dr. Robbins had not diagnosed or treated children who have been victims of sexual abuse. She had not completed any coursework in cognitive psychology or forensic interviewing. Although her work experience includes training forensic interviewers in more than fifty workshops and watching over one hundred recorded forensic interviews, she has never "conducted or directly observed a forensic interview of a child." "In fact," the trial court noted, "Dr. Robbins testified that she has no clinical experience with child patients other than in the context of providing family therapy that was unrelated to the issue of child sexual abuse."

As an academic, Dr. Robbins had published "approximately fifty articles and book chapters on topics such as substance abuse, club drugs, recovered memory, satanic ritual abuse, social work pedagogy, and issues facing the Native American community." Despite addressing this wide range of topics, "she has not authored a single article or applied for any research grants on the subjects of child sexual abuse, false allegations of child sexual abuse, forensic interview techniques, or the suggestibility of child witnesses."

Although she acknowledged that reading alone may provide expertise, Judge Mitchell-Rankin was concerned that Dr. Robbins had not read the latest

editions of some of the sources she cited and was unaware that an article on which she relied had been withdrawn. When pressed to explain how the studies she listed, which focused primarily on preschool children, demonstrated the suggestibility of older children, Dr. Robbins claimed that there was newer research on that subject which she had failed to cite. Dr. Robbins confirmed, however, that "there are not enough studies [on the suggestibility of older children] to have a true consensus." The trial court found that this testimony failed "to demonstrate (or even attempt to explain) how any of [the] research is applicable to children between the ages of eight and ten, the pertinent age range in the subject case." Judge Mitchell-Rankin explained that "the conceded lack of consensus in the academic community is relevant to the second *Dyas* prong because it suggests that Dr. Robbins does not have sufficient knowledge, based upon 'reading alone,' to render an opinion that would likely assist in the search for truth."

## C. The State of the Scientific Knowledge

Under the third prong of *Dyas*, "expert testimony is inadmissible if 'the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.'" 376 A.2d at 832. This inquiry "begins—and ends—with a determination of whether there is general acceptance of a particular

scientific methodology, not an acceptance, beyond that, of particular study results based on that methodology." *Ibn-Tamas*, 407 A.2d at 638.

During her testimony, Dr. Robbins failed to connect her opinion to specific studies that were relevant to the suggestibility of eight and ten year olds. The articles on the list that she provided to the court pertain to children of preschool age. When challenged on this discrepancy, Dr. Robbins explained that in "certain situations . . . adults are even more suggestible than children. It depends on the methodology, it depends on the study . . . . [T]he newer research is suggesting that what we thought before, that the older children and adults are not suggestible, that's simply not the case."

When asked whether any of this newer research was on the list of sources on which she had relied, Dr. Robbins replied, "[n]o, it is not." After glancing at her list, she then said, "I need to change my answer because I just found that one of these sources does have it." Dr. Robbins indicated a source on the list, saying, "I don't have that article with me. And I don't have any other references on this list about adult suggestivity because this workshop [for which the list was originally prepared] was never about adults." The government's attorney produced the

indicated study and showed it to Dr. Robbins. After looking at it, Dr. Robbins said, "[o]kay, this is not the article I was thinking of."

As Judge Mitchell-Rankin explained, Dr. Robbins'

> claim that the studies are "coming to a consensus" is insufficient to justify a conclusion that there is general acceptance in the relevant scientific community concerning the methodology for identifying the extent to which children between the age of eight and ten are suggestible, nor does it justify a conclusion that there is general acceptance of a specific methodology of questioning eight- and ten-year-old children during forensic interviews.

Appellant "argu[ed] that because the methodology involving preschool-aged children is generally accepted, so too is the methodology used in the . . . studies involving children between the ages of eight and ten." The trial court found that "[t]his argument . . . is unsupported by Dr. Robbins' testimony and the literature cited in her reference list."

### III.    Reviewing for Abuse of Discretion

In recent years we have remanded several cases for further proceedings where the trial court had excluded expert testimony proffered by the defense. In some instances, the evidence had been excluded almost as a categorical matter. *See Russell v. United States*, 17 A.3d 581, 588 (D.C. 2011) (remanding "to allow the trial court to give individualized consideration to the defense's proffer in the context of the facts in this case"); *Benn*, 978 A.2d at 1261 (observing that the trial court "came dangerously close to employing a *per se* rule of exclusion"). In other cases, the trial court applied incorrect legal principles. *See Minor v. United States*, 57 A.3d 406, 409 (D.C. 2012) (agreeing that "the trial court abused its discretion because the underpinnings for its exclusion of the testimony go solely to the weight of the expert testimony and not to its admissibility under *Dyas*").

Despite this recent trend, we have not created a regime of *per se* admissibility to replace a practice of routine exclusion. We still recognize that "[w]hether to admit expert testimony is committed to the discretion of the trial court; a ruling either admitting or excluding such evidence will not be disturbed unless manifestly erroneous—*i.e.,* for abuse of discretion." *Benn*, 978 A.2d at 1273 (internal quotation marks and citation omitted); *see In re Melton*, 597 A.2d 892, 901 (D.C. 1991) (en banc) ("The admission or exclusion of expert testimony . . . is committed to the trial court's broad discretion.").

"The concept of 'exercise of discretion' is a review-restraining one." (*James*) *Johnson v. United States*, 398 A.2d 354, 362 (D.C. 1979). We make "two distinct classes of inquiries when reviewing a trial court's exercise of discretion." *Id*. at 367. First, we ask "whether the exercise of discretion was in error[.]" *Id*. If we conclude that it was, we then must determine "whether the impact of that error requires reversal. It is when both these inquiries are answered in the affirmative that we hold that the trial court 'abused' its discretion." *Id*.

Judge Mitchell-Rankin did not err in exercising her discretion. She diligently applied all three prongs of the *Dyas* test after carefully eliciting the witness's qualifications and her substantive testimony. The judge was aware of her discretionary authority and exercised it in a case-specific inquiry. This was just the sort of "reasoned and reasonable exercise of discretion" to which we will defer. *Benn*, 978 A.2d at 1276.[4] Appellant insists, however, that there was only one permissible outcome based on this record. We disagree. "[T]he core of 'discretion' as a jurisprudential concept is the absence of a hard and fast rule that

---

[4] The reader will have noted that the trial judge spent an extraordinary amount of time complying with our remand order. We applaud her diligence, but we are not suggesting that such a time-consuming inquiry will be required in all cases in order to pass appellate muster.

fixes the results produced under varying sets of facts." *(James) Johnson*, 398 A.2d at 361. In other words, "[d]iscretion signifies choice." *Id.*

The record in this case does not mandate that Dr. Robbins' testimony be admitted. Nor does the Constitution require it. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense[,]'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), and this includes the right to present *appropriate* expert testimony. *Benn*, 978 A.2d at 1269. But invocation of that right does not displace the rules of evidence, nor does it rob a trial judge of discretion. "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326. The *Dyas* test is one of those well-established rules, and it cannot fairly be said that this test is "arbitrary or disproportionate to the purposes [it is] designed to serve." *Id.* at 324 (citation omitted) (describing rules of evidence which abridge the right to present a defense).

In other words, the right to present evidence "is not unlimited" and may "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted). One such

legitimate concern, embodied in the *Dyas* test, is that expert testimony serve its proper function and not usurp the role of the jury. "[B]ecause expert or scientific testimony possesses an 'aura of special reliability and trustworthiness,' the proffer of such testimony must be carefully scrutinized." *Ibn-Tamas*, 407 A.2d at 632 (citation omitted); *see* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 13, at 90 (7th ed. 2013) ("In the past three decades, the use of expert witnesses has skyrocketed. . . . Some commentators claim that the American judicial hearing is becoming a trial by expert."). After such careful scrutiny, Judge Mitchell-Rankin determined that Dr. Robbins' testimony did not meet the *Dyas* test. Because we uphold this exercise of discretion, we need not address her alternative ruling assessing the impact Dr. Robbins' testimony would have had on the verdict.

## IV. Conclusion

The judgment of the Superior Court is hereby

*Affirmed*.